### A91A1562. MILLER v. THE STATE.
(414 SE2d 326)

Judge Arnold Shulman.

The appellant was found guilty of driving under the influence and operating a motor vehicle after having been declared an habitual violator. However, the trial judge granted him a new trial on the DUI conviction, based upon a determination that the jury had erroneously been instructed that the appellant "could be convicted of DUI for merely operating a non-moving vehicle." Thus, the present appeal concerns only the habitual violator conviction.

At approximately 5:00 a.m. on June 25, 1989, the appellant was discovered in the driver's seat of a motor vehicle which was stopped in the roadway with its engine running, its transmission in gear, and its lights on. The appellant was asleep in the car at the time, with his foot on the brake pedal. The only contested issue at trial was whether he had been *driving* the vehicle. (His testimony was that the automobile had "cut off" while his wife was driving it, and he had been called to the scene to try to fix it.) The appellant contends on appeal that the trial court erred in instructing the jury that the term "operate" as used in OCGA § 40-5-58 (c) — the Code section setting forth the offense of operating a motor vehicle after having been declared an habitual violator — "does not necessarily mean drive, although it can include drive."

The instruction was correct. OCGA § 40-5-58 (c) specifies, in pertinent part, that "it shall be unlawful for any person *to operate any motor vehicle* in this state after such person has received notice that his driver's license has been revoked [due to his having been declared an habitual violator], if such person has not thereafter obtained a valid driver's license." (Emphasis supplied.) The word "operate" is

not defined by the statute; however, the word "operator" is defined by OCGA § 40-1-1 (38) to mean "any person who drives *or is in actual physical control of a motor vehicle.*" (Emphasis supplied.)

In construing an earlier version of the DUI statute making it a criminal offense "for any person who is under the influence of intoxicating liquor to operate or drive any vehicle," (Ga. L. 1953, Nov. Sess., pp. 556, 575; former Code Ann. § 68-1625 (a)), this court held that "one who is sitting under the steering wheel of a car located on a public highway with the motor running, who is in physical control of the vehicle, and who engages the lights of the vehicle, is operating the vehicle within the meaning of the [statute]." *Flournoy v. State,* 106 Ga. App. 756, 759 (128 SE2d 528) (1962). This former proscription against merely operating a vehicle while under the influence of intoxicating liquor was replaced in 1974 by the present statutory language making it unlawful to drive or to be "in actual physical control of any *moving* vehicle" while under the influence of alcohol or drugs. Ga. L. 1974, pp. 633, 693 (now codified as OCGA § 40-6-391 (a)). (Emphasis supplied.) See *Carr v. State,* 169 Ga. App. 679 (2) (314 SE2d 694) (1984). However, the habitual violator statute under which the appellant was convicted contains no such requirement but, as previously indicated, specifies simply that "it shall be unlawful for any person to operate any motor vehicle in this state" after his driver's license has been revoked under the provisions of the habitual violator statute.

The appellant complains that a literal interpretation of this statutory language "would lead to the conclusion that anyone declared an habitual violator could never be an auto mechanic." However, we are not called upon in the present case to address this hypothetical question, inasmuch as the vehicle at issue here was unquestionably located on a public roadway at the time of the appellant's arrest. The evidence, construed in the light most favorable to the verdict, was amply sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of operating a motor vehicle after having been declared an habitual violator. See generally *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Carley, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

The confusion illustrated by this case and other motor vehicle cases which have preceded it comes primarily from the legal definition and, hence, common usage of the terms "driver" and "driver's license." The law defines "driver" as "every person who drives or is in actual physical control of a vehicle." OCGA § 40-1-1 (14). Compatibly, it designates "driver's license" as "any license to operate a motor vehicle issued under the laws of this state." OCGA § 40-1-1 (15).

Reading the two together, to "operate" thus means "to drive" or "to be in actual physical control." This comports with the statutory definition of "operator," as quoted in the majority opinion. The terms "driver" and "operator" are identically defined.

A "driver's" license is needed in Georgia, by the law's definition, not only to drive; it is needed more broadly to operate, which includes not only driving but also being in actual physical control short of driving. It is misleading to think of it merely as a "driver's license," as it is in reality an operator's license.

So when OCGA § 40-5-58 (c) pronounces it unlawful for a person "to operate" a motor vehicle after notice from the Department of Public Safety of revocation of his or her "driver's" license, that person is charged with understanding that he or she may neither drive nor be in actual physical control of a motor vehicle.

DECIDED JANUARY 6, 1992.

*Elizabeth Markowitz*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Herman L. Sloan, Carl P. Greenberg, Assistant District Attorneys*, for appellee.

