A96A2461. MAZO v. THE STATE.
(481 SE2d 831)

Judge Harold R. Banke.

Mark Mack Mazo was indicted on charges of habitual violator and driving under the influence ("DUI"). In his initial trial, the jury could not reach a verdict on the habitual violator charge and acquitted him on the DUI charge. After a second trial he was adjudicated an habitual violator. On appeal, he enumerates two errors.

This case arose after a police officer observed Mazo sitting in the driver's seat of a running car in front of his home at 3:00 a.m. The

officer watched the car "for just a couple of seconds, then . . . pulled in behind it and turned on . . . [his] blue lights" because he was concerned about thefts in the neighborhood.[1] The officer could not recall whether the car's lights were on. In response to the officer's inquiry, Mazo explained that he lived there and was just going to the grocery store. The officer then asked Mazo for some identification and permitted Mazo to retrieve it from his house. Mazo entered his home and returned with several pieces of identification, but not a driver's license. After Mazo could not produce a driver's license and the officer radioed an inquiry, Mazo admitted that his license was suspended and that he was an habitual violator. Mazo later explained that he was simply warming up the car for his wife. The arresting officer admitted Mazo was not free to leave "from the very beginning." *Held*:

1. The trial court should have granted Mazo's motion for mistrial or issued curative instructions after the State repeatedly disregarded its order granting Mazo's motion in limine to exclude all mention of drinking and driving. When counsel improperly injects excluded, prejudicial matters into evidence, " 'it is the duty of the court to interpose and prevent the same; and, on objection made, . . . [it] shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in . . . [its] discretion, . . . order a mistrial. . . .' [Cit.]" *Johnson v. State*, 238 Ga. 59, 60 (230 SE2d 869) (1976).

As the trial commenced, Mazo successfully moved in limine "to ensure that the State makes no mention of driving under the influence or argues DUI or drinking and driving on any point, especially on voir dire." After the State vigorously opposed the motion, the court clearly explained that just as extraneous questions regarding murder would be inappropriate, so would inquiry into drinking and driving, because Mazo had been acquitted of that charge.

However, during the testimony of the first witness, the arresting officer, the State inquired about Mazo's condition at the time of the arrest and specifically asked whether the officer had smelled alcohol. The officer responded that Mazo had had a good bit to drink. Shortly thereafter, the officer testified that he had given Mazo the implied consent warnings. The State then inquired, "[a]nd that is something for DUI?"

Mazo immediately moved for a mistrial. During argument, the State essentially denied that it had questioned the witness about DUI and then argued that the court had never excluded such evi-

---

[1] Mazo's counsel did not seek to suppress all evidence subsequent to the stop for lack of a " 'particularized and objective basis for suspecting the particular person stopped of criminal activity.' [Cit.]" *Vansant v. State*, 264 Ga. 319, 320-321 (2) (443 SE2d 474) (1994).

dence, notwithstanding the lengthy explanation the court previously provided on that issue. Although the court denied the motion for mistrial, it sua sponte volunteered to instruct the jury "in the course of events" that Mazo was not being tried for DUI. The court observed "I think we've got reversible error in here three times, but let's proceed." The record shows that the jury was not instructed regarding Mazo's acquittal or told that he was not being tried for DUI. Nor was the portion of the indictment charging Mazo with DUI redacted.

In making the inquiry immediately preceding the motion for mistrial, the State indulged in a covert attempt to present the excluded matter to the jury, a practice inappropriate in any court, particularly by a representative of the State. Moreover, even after the ruling on the motion for mistrial, the State continued to raise the issue of drinking and driving, despite the exclusion of that evidence. "This is significant not only because counsel violated a court order, but also because counsel" injected prejudicial and irrelevant character evidence into the trial. *Gonzalez v. Wells*, 213 Ga. App. 494, 495 (2) (445 SE2d 332) (1994) (reversal for failure to grant mistrial based on counsel's injection of excluded evidence). In addition, the State's brief continues to ignore the significant fact that the State violated a court order excluding the evidence, relying on cases in which the contested evidence had not previously been excluded and arguing that the evidence was admissible as part of the res gestae or as a similar transaction. Such conduct, as a whole, hardly promotes the integrity of the legal profession or advances the most rudimentary goal of our judicial system, fair trials. See Code of Professional Responsibility, Canon 7, Ethical Consideration 7-25.

Nor can we find that the admission of the excluded evidence was harmless. In *Johnson*, our Supreme Court reversed a conviction on two counts of armed robbery after the State injected prejudicial matters not in evidence into its closing argument. *Johnson v. State*, 238 Ga. at 60. After reviewing the evidence and observing that Johnson's first trial had resulted in a mistrial, the Supreme Court rejected the State's contention that the error was harmless. Id. at 60-61. Notwithstanding eyewitness testimony linking Johnson to the crimes, the Court could not say that it was "highly probable that the error did not contribute to the jury's verdict." Id. at 61-62. In light of the first trial's result and the evidence, which is no more compelling than that in *Johnson*, we must reach the same conclusion in this case.

2. The issue presented in Mazo's second enumeration arose in the context of compiling the jury charges. Because it may be relevant should Mazo face a third trial, we reach his contention that he did not "operate a motor vehicle" within the meaning of the habitual vio-

lator statute, OCGA § 40-5-58 (c).[2]

Admittedly, that statute does not define the word "operate." However, the legislature evinced its intent to broadly construe the word by defining "operator" as "any person who drives or is in actual physical control of a motor vehicle" in OCGA § 40-1-1 (38), the definition section of the motor vehicle code. As further evidence of the legislative intent, we observe that the General Assembly changed the language of the DUI statute in 1974 to make it unlawful to drive or be "in actual physical control of any *moving* vehicle" while under the influence of alcohol or drugs. (Emphasis supplied.) OCGA § 40-6-391 (a). The legislature included no such requirement in the habitual violator statute. It follows that a conviction under OCGA § 40-5-58 (c) requires no proof that the vehicle was actually moving. *Metheny v. State*, 197 Ga. App. 882, 887 (1) (d) (400 SE2d 25) (1990) (physical precedent only).

*Judgment reversed. Johnson and Ruffin, JJ., concur.*

DECIDED JANUARY 31, 1997 —
RECONSIDERATION DENIED FEBRUARY 20, 1997 — 

*M. Ross Becton, Jr.*, for appellant.

*Spencer Lawton, Jr., District Attorney, Christine M. Sieger Barker, Assistant District Attorney*, for appellee.

[2] We observe that in arguing that *Miller v. State*, 202 Ga. App. 414, 415 (414 SE2d 326) (1992), defined the law on this issue, the State failed to inform the trial court that the case was physical precedent only and therefore not binding authority. Court of Appeals Rule 33 (a).