## A01A1738. HARRIS v. THE STATE.
### (555 SE2d 485)

MIKELL, Judge.

William Justin Harris was convicted of possession of methamphetamine.[1] On appeal, he claims that (1) he was stopped and searched in violation of his Fourth Amendment rights, (2) the evidence was insufficient to support the verdict, (3) the prosecution improperly put his character in issue, and (4) he received ineffective assistance of counsel. We reverse because the prosecution put Harris's character in issue in direct contravention of the trial court's pretrial ruling, and because the trial court gave an erroneous instruction to the jury in connection with the improper character evidence.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[2] So viewed, the evidence shows that the Dade County Sheriff's Office and other law enforcement agencies set up a checkpoint on the Slygo Road exit off Interstate 59. The roadblock was set up to "make the road safe," and to look for DUI drivers and other criminal offenses. The police placed a sign by the interstate before the exit which stated, "Prepare to stop, drug checkpoint ahead," although there was no checkpoint on the interstate itself. The actual checkpoint was situated on the exit after the drug checkpoint sign with the anticipation that drug users and drug runners would get off on that exit in order to avoid being stopped at the phantom "drug checkpoint" on the interstate.

Harris was a passenger in a car which was stopped at the Slygo exit checkpoint. An officer noticed that Harris was extremely nervous and asked the K-9 unit to run a dog around the car, and the dog alerted to the presence of drugs. Officers asked the occupants to step out of the car, and they conducted a pat-down of Harris. When Harris took his shoes off, the officers conducting the search saw the end cap of a small flashlight directly at his feet. No one saw Harris drop the cap, but no officer had seen the cap before Harris began to take off his shoes. Inside the cap were three bags containing methamphetamine. The police expected that drugs would be thrown out of a few of the vehicles before being stopped at the checkpoint; accordingly, several officers were assigned to do nothing but walk up and down the exit ramp looking for discarded contraband. None of the approximately 15 law enforcement officials in the area had noticed the flashlight cap before it was seen at Harris's feet.

1. Harris claims that the checkpoint violated his Fourth Amendment rights against unreasonable searches and seizures. However,

---

[1] OCGA § 16-13-30.

[2] *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

this claim may not be considered for the first time on appeal.[3] Harris made no written motion to suppress before trial and failed to object to the state's tender of the methamphetamine into evidence.

2. Harris argues that the evidence was insufficient to support his conviction. We disagree. Harris emphasizes that none of the officers saw the flashlight cap in his actual possession, and that other motorists had thrown items out of their vehicles as they approached the checkpoint. He maintains that anyone could have dropped the cap, that there is no evidence of actual possession, and that constructive possession requires more than a showing of mere proximity.[4] However, the evidence, and the inferences that can be logically derived from the evidence, shows more than mere spatial proximity between Harris and the methamphetamine.[5] The flashlight cap was found directly at Harris's feet, and there were no other persons in the immediate vicinity aside from the police. Although there were several officers in the area, none of them saw the cap until Harris removed his shoes. Police were assigned to look for contraband on the ground, and they had not previously seen the cap. Harris testified on cross-examination that he was a methamphetamine user and that he had used the drug only a few days before his arrest. We find that the evidence was sufficient for a rational trier of fact to find Harris guilty beyond a reasonable doubt of possession of methamphetamine.[6]

3. Harris claims that the prosecution improperly put his character into evidence. We agree. Harris made a motion in limine before trial to exclude testimony that on the day of the arrest he was en route home from Chattanooga, Tennessee, where he had appeared in court in response to a robbery charge. The trial court correctly granted Harris's motion, noting that the Tennessee court appearance was not relevant. Nevertheless, the prosecutor asked Harris's wife, who had been with him in the car, and who had testified on direct examination that they had been to court earlier and were on their way back home, to repeat her testimony that she had been in court with her husband and then asked her: "Q: And what had ya'll been to court for that day? A: It was aggravated robbery." Defense counsel objected. At a bench conference, the trial court told the prosecutor that his line of questioning was improper. The trial court then gave the jury a limiting instruction on similar transaction evidence, which included an instruction that "The law provides that evidence of other offenses committed by this Defendant which are similar or connected

---

[3] See *Duitsman v. State,* 212 Ga. App. 348, 349 (2) (441 SE2d 888) (1994); *Gee v. State,* 210 Ga. App. 60, 61 (3) (435 SE2d 275) (1993).

[4] *Whipple v. State,* 207 Ga. App. 131, 132 (1) (427 SE2d 101) (1993).

[5] See *Aldridge v. State,* 237 Ga. App. 209, 211-212 (1) (515 SE2d 397) (1999).

[6] See *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

to the offense for which the Defendant is on trial may be admissible."

This sequence of events was fatally prejudicial to Harris's defense. First, the testimony solicited by the prosecution regarding Harris's court appearance in Chattanooga on a robbery charge was irrelevant and reflected badly on his character. "It is error in a criminal case for the State to place the defendant's character in issue [when] he has not voluntarily chosen to do so."[7] Secondly, if the prosecution solicits excluded prejudicial testimony, the trial court is, upon objection and if it chooses not to declare a mistrial, required to direct the jury to disregard such testimony.[8] Here, upon objection by defense counsel to the prosecution's questioning, the trial court did not instruct the jury to ignore the prejudicial testimony, but instead immediately instructed the jury on similar transaction evidence although no similar transaction evidence had been introduced. This instruction infers that the jury had heard evidence that Harris had committed another offense when no such evidence was introduced. Finally, the evidence supporting Harris's guilt is not overwhelming, and we have found that upon the prosecution's intentional introduction of irrelevant and inadmissible evidence, "we will not speculate to the prejudice of the defendant by concluding the error must have been harmless."[9] Harris's conviction must be reversed.

4. Finally, Harris argues that he received ineffective assistance of counsel. In view of Division 3 of this opinion, the claim is moot.

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED OCTOBER 11, 2001.

*Cook & Connelly, Rex B. Abernathy*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.

---

[7] *Bowen v. State*, 123 Ga. App. 670 (182 SE2d 134) (1971).

[8] *Mazo v. State*, 224 Ga. App. 744, 745 (1) (481 SE2d 831) (1997).

[9] *Hammond v. State*, 139 Ga. App. 820, 822 (1) (229 SE2d 685) (1976).