304 Ga. 843
FINAL COPY

S18A1040. MONDRAGON v. THE STATE.

BLACKWELL, Justice.

Juan Cortez Mondragon was tried by a DeKalb County jury and convicted of the murder of Carlos Perez and an aggravated assault upon Heriberto Soto. Mondragon appeals, claiming that the trial court erred when it admitted evidence of Perez's good character and when it excluded evidence of Perez's blood alcohol content at the time he was killed. We find no reversible error and affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence shows that Perez and Soto went to the Chicken Plaza restaurant on Shallowford Road

---

[1] On June 30, 1997, a DeKalb County grand jury indicted Mondragon, charging him with malice murder, felony murder, and aggravated assault. Mondragon was not arrested, however, until 2014, and his trial began on February 29, 2016. On March 3, 2016, the jury found Mondragon guilty of all charges, and the trial court sentenced him to imprisonment for life for malice murder and a consecutive term of imprisonment of 20 years for aggravated assault. The trial court purported to merge the felony murder count into malice murder, but it was actually vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Mondragon filed a timely motion for new trial on March 15, 2016, which he amended on September 20, 2017. The trial court denied the amended motion for new trial on September 28, 2017, and Mondragon filed a timely notice of appeal on October 25, 2017. After Mondragon's appeal was transferred to this Court from the Court of Appeals on February 6, 2018, it was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

in DeKalb County on the afternoon of August 5, 1996. A short time later, Mondragon and a coworker arrived at the restaurant. Perez and Soto each drank six or seven "small" beers over the next few hours, and Soto observed that Mondragon appeared to be angry. When Soto approached Mondragon and offered to shake his hand, Mondragon refused and said, "I'm not one of your friends." Later in the evening, as Perez and Soto exited the restaurant, Mondragon pulled a .38 caliber revolver from his waistband and shot at them from the passenger side of his coworker's van. Perez and Soto were each struck by two bullets, and Perez was killed. Mondragon fled the scene on foot and was not apprehended until 2014, when he was stopped for a traffic violation in Texas. At his trial, he claimed that he shot Perez and Soto in self-defense.

Mondragon does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdicts, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Mondragon was guilty of the murder of Perez and the aggravated assault of Soto. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Mondragon claims that the trial court erred when it overruled his objection to evidence of Perez's good character. When the State asked Soto on direct examination whether he had ever known Perez to get into a fight, Mondragon objected that the question sought to elicit "[i]mproper character evidence." The trial court overruled the objection and allowed Soto to testify that he had never seen Perez get into a fight or argument in the four or five years that he had known him. Later, Haroldo Bartolon (who knew Perez and was also present at the Chicken Plaza restaurant on the night of the shooting) testified without objection that Perez "was very friendly and very respectful" and that he had never seen Perez get into a fight or have a weapon.

Character evidence is generally inadmissible to prove "action in conformity therewith on a particular occasion," but evidence of the peaceful character of an alleged victim may be offered by the State "in a homicide case to rebut evidence that the alleged victim was the first aggressor." OCGA § 24-4-404 (a) (2). At the time that the State introduced the evidence at issue, Mondragon had not yet testified that Perez and Soto were the first aggressors and that he shot at them in self-defense. It is error for a trial court to admit evidence of a victim's good character in anticipation of the defendant introducing contrary evidence at trial; the evidence of good character is

admissible only *after* the defendant presents his evidence. <u>Revere v. State</u>, 302 Ga. 44, 48 (2) (a) (805 SE2d 69) (2017). But we fail to see how Mondragon was prejudiced by such an error. See <u>Smith v. State</u>, 299 Ga. 424, 432 (2) (d) (788 SE2d 433) (2016) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (citation and punctuation omitted.)).[2]

Here, Mondragon's sole defense was that Soto and Perez were the first aggressors and that he was justified in shooting at them, and he does not suggest that he would have asserted any other defense had the State not prematurely introduced evidence of Perez's character. And because Mondragon always intended to (and eventually did) introduce evidence that Perez and Soto were the first aggressors, any error in admitting evidence of Perez's good character was solely an error of sequencing. Mondragon has not even tried to explain how a sequencing error could have affected the outcome of his trial. It was undisputed that Soto and Perez were unarmed on the night

---

[2] Mondragon did not object to the testimony offered by Bartolon, so we review the claim as to that testimony only for plain error. See OCGA § 24-1-103 (d); see also <u>Mosley v. State</u>, 298 Ga. 849, 851 (2) (a) (785 SE2d 297) (2016) (to show plain error, appellant "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings" (citation and punctuation omitted)).

in question, even Mondragon's coworker testified that Mondragon shot Perez and Soto without justification, and the lack of stippling on Perez's clothing indicated that he was shot from at least several feet away (which was inconsistent with Mondragon's claim that Perez and Soto were grabbing and pushing him when he shot them). It is highly probable that any sequencing error in admitting Soto's testimony did not contribute to the verdict (and that the admission of Bartolon's similar testimony was not plain error because Mondragon has not shown that it affected his substantial rights). This claim of error, therefore, has no merit.

3. Mondragon also asserts that the trial court erred when it prevented him from introducing a toxicology report containing evidence of Perez's blood alcohol content at the time he was killed. Mondragon sought to introduce this evidence to corroborate his claim that Perez was aggressive and to contradict the testimony of Soto and others that Perez did not appear to be intoxicated. But when the trial court stated its concerns about the relevance of the evidence and gave Mondragon an opportunity to respond, Mondragon was unable to proffer any evidence about how Perez's drinking tended to affect his behavior.[3]

---

[3] Mondragon's lawyer initially said that Mondragon himself would be able to offer testimony about how alcohol affected Perez, but Mondragon had no experience with Perez other than on the night Perez was killed.

See Gill v. State, 296 Ga. 351, 352 (2) (765 SE2d 925) (2014) (toxicology report inadmissible where defendant was unable to show "how any drugs that were allegedly in [the victim's] system may have been affecting his behavior at the time of his fatal encounter with [the defendant]"). See also Dunn v. State, 292 Ga. 359, 361 (3) (736 SE2d 392) (2013) ("[I]t was difficult to ascribe how such a concentration affected the victim because the medical examiner did not know the victim's experience with alcohol and could not tell whether it made her euphoric, aggressive, or sleepy."). Because Mondragon was unable to proffer evidence of the effect that Perez's blood alcohol content would have had on him (or even the effect that drinking alcohol had on him generally), the toxicology report would not have impeached the testimony from Soto and others that Perez did not appear to be intoxicated to them, and the trial court did not err when it excluded this evidence.[4] See Gill, 296 Ga. at 352 (2).

Judgment affirmed. All the Justices concur.

---

[4] In any event, the jury heard lots of evidence that Perez had been drinking on the night in question, and one of the witnesses who testified that Perez (and Soto) did not appear to be drunk acknowledged that he did not "have an alcohol reader" and had no way of knowing if Perez was actually under the influence of alcohol other than by observing that Perez was not staggering or slurring his words.

Decided January 22, 2019.

Murder. DeKalb Superior Court. Before Judge Scott.

Daniel H. Petrey, for appellant.

Sherry Boston, District Attorney, Deborah D. Wellborn, Drew K. Shumate, Otobong U. Ekpo, Helen P. Pott, Anna G. Cross, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.