**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2019**

# In the Court of Appeals of Georgia

A19A0814. ZACCHAEUS HOLT v. THE STATE.

RICKMAN, Judge.

Zacchaeus Holt was tried and convicted of armed robbery, aggravated battery, and possession of a firearm during the commission of a felony. Following the denial of his motion for new trial, Holt appeals. For the reasons that follow, we reverse.

Construed in favor of the verdict, the evidence presented at trial shows that Holt met the victim in September or October 2015 and explained that he had no place to stay. At some point, the victim let Holt stay with him in an apartment that the victim had moved into on September 25. During their first two weeks living together, the victim and Holt sometimes used cocaine together.

At the time of the robbery, the victim recently had a job that paid him $722 twice a month, he had about $700 cash in his possession, and he had told Holt that he

had recently been paid. On the morning in question, after the two men had been up all night drinking and smoking crack cocaine, rendering the victim, in his own words, "high, high, high, you know," the victim gave Holt $100 to buy more drugs. The victim's additional cash was visible to Holt at that time. Holt left the apartment and eventually returned empty handed or with an inadequate amount of drugs. When the victim asked for his money back, Holt departed again but returned with a pistol and demanded money from the victim. The victim refused, and Holt shot him twice in the leg, which later had to be amputated. During the ensuing struggle, Holt pistol whipped the victim on the head, further injuring him, then took the victim's money. Holt then fled, and the victim called for and received help from a neighbor.

Holt, age 20 at the time of the incident, testified in his own defense that he was looking for an apartment where the victim lived, that he received social security disability payments, that the victim recently invited him to live there in exchange for $150 a month, and that Holt had made a rent payment to the victim. Holt testified that on the night of the incident, he was smoking marijuana and drinking beer while the victim was smoking crack cocaine, that the victim asked him to buy some drugs and gave him $100 to do so, that he purchased the drugs, and that the victim used them. At approximately 7:22 a.m., Holt left to purchase a gun for $100 even though he

2

already had a loaded handgun. When he returned, the victim asked Holt for $20 to buy more drugs, but Holt refused. At that point the two men "got into [a] little altercation," and the victim, who was much bigger than Holt, attacked Holt, striking him in the face. In response, Holt pulled his loaded weapon from his waistband and fought back by striking the victim in the head, and, after the victim began to choke Holt, by pointing the gun downward and shooting the victim in the leg. Holt then panicked and fled. He denied trying to rob the victim.

Following his conviction and the denial of his motion for new trial, Holt appeals.

1. On appeal, Holt contends the trial court committed plain error by allowing the State to introduce good character evidence regarding the victim. In the alternative, he contends his trial counsel was ineffective by failing to object to the same evidence. The State counters that the evidence at issue was used to rebut specific inferences that Holt raised on cross-examination of the victim.

The State called the victim as its first witness and, during the direct examination, the State asked the victim if he was an "angry drunk, or . . . angry high," which the victim denied. The State also asked the victim whether he had ever been convicted of a violent offense, which he also denied. Holt did not object to this

3

testimony. On cross-examination, Holt impeached the victim by getting the victim to admit that he had multiple convictions for simple battery, that he had used aliases to evade arrest, that he had used cocaine in his past, that he had spent perhaps ten years in prison and was currently on parole.

The State then called as a witness the victim's boss at a nonprofit organization. He testified that the organization employed convicted felons but only nonviolent felons and that the victim had never been violent at work. The witness also testified, however, that he had never fired the victim; that the victim never had to be disciplined; and that the victim was a good worker, was "always happy to be there," and made friends with everyone. The State also called the victim's employer's human resources director as a witness. She testified that the victim tested negative for drugs when he was employed, that she had not received any complaints about the victim, and that the victim was a "very good employee," was "extremely reliable," had a "great attitude," was "very dependable," was "extremely respectful," and was "very professional." Holt did not object to this testimony from these two witnesses.

(a) Because Holt did not object to the State's introduction of good character evidence about the victim, we review the trial court's decision for plain error. See *Cade v. State*, _ Ga. App. _ (4) (832 SE2d 453) (2019) (appellate review of

4

evidentiary rulings without objection "are conducted for plain error affecting the [a]ppellant's substantial rights under OCGA § 24-1-103 (d)"); see also *Beach v. State*, _ Ga. App. _ (3) (b) (830 SE2d 565) (2019).

> To show plain error, [Holt] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity[,] or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018).

First, given that the State initially introduced the good character evidence on direct examination of the victim during its case in chief, we find no affirmative waiver[1] by Holt regarding the introduction of this evidence.[2]

---

[1] "For purposes of plain error review, an affirmative waiver requires the intentional relinquishment or abandonment of a known right, and the mere failure to object does not constitute such an affirmative waiver because it is more appropriately described as a forfeiture." (Citation and punctuation omitted.) *State v. Parks*, 350 Ga. App. 799, 810 (1) (830 SE2d 284) (2019).

[2] The State's suggestion that the defense opened the door as to the victim's character during opening statement is without merit. "[W]hat is said by the attorneys in opening statements is not evidence." *Zackery v. State*, 286 Ga. 399, 402 (3) (688 SE2d 354) (2010).

The admissibility of evidence of a victim's character is governed by OCGA §§ 24-4-404 and 24-4-405. See *Revere v. State*, 302 Ga. 44, 47 (2) (a) (805 SE2d 69) (2017). Under these rules, "the State may only introduce evidence of a victim's good character to *rebut* evidence of a *pertinent character trait* of the victim after the defendant has first introduced such evidence at trial." (Emphasis supplied.) Id. Furthermore, "[i]t is error for a trial court to admit evidence of a victim's good character in anticipation of the defendant introducing contrary evidence at trial." *Mondragon v. State*, 304 Ga. 843, 844-845 (2) (823 SE2d 276) (2019).

Here, the State introduced evidence of two types of good character traits of the victim without Holt having opened the door to such testimony. First, on direct examination of the victim by the State, the victim testified that he did not get angry under the influence of alcohol or drugs and that he had not been convicted of a violent offense. Second, the State elicited from two witnesses numerous references to the victim being a good worker, a "very good employee," "extremely reliable," "very dependable," "extremely respectful," "very professional," and having a "great attitude," without Holt having opened the door to any character evidence whatsoever about what type of employee the victim was. This was clear error not subject to dispute. See *Revere*, 302 Ga. at 47-49 (2) (a) (evidence of victim's good character

6

introduced during State's case-in-chief before defendant offered any testimony or evidence on the topic violated Rule 404 (a) (2) and, therefore, "was simply inadmissible evidence of [victim's] good character").

We turn to whether the error affected Holt's substantial rights or seriously affected the fairness, integrity, or public reputation of the proceedings. If the improper evidence included only the victim's character for violence, we would not find the requisite harm. At trial, Holt admitted hitting and shooting the victim, and, as he had planned prior to trial,[3] he asserted self-defense. His assertion of self-defense involved attacking the victim's character regarding violence and asserting that the victim was the aggressor. Holt foreshadowed this tactic during opening statement, when his counsel argued that the victim's story was one of "[a]ddiction, fear, and self-preservation." Thus, "because [Holt] always intended to (and eventually did) introduce evidence that [the victim] w[as] the first aggressor[ ], any error in admitting evidence of [the victim's] good character [as it related to violence] was solely an error of sequencing." *Mondragon*, 304 Ga. at 845 (2). And, it is therefore highly probable

---

[3] Holt requested a jury charge on self-defense, which the court gave, his voir dire questions included one on self defense, and he argued self-defense in closing.

that such a sequencing error did not contribute to the verdict and, accordingly, it does not amount to plain error. See Id.

That leaves the evidence regarding the victim's good character as an employee. Pretermitting whether the improper introduction of this evidence standing alone affected Holt's substantial rights or seriously affected the fairness, integrity, or public reputation of judicial proceedings, we reverse Holt's conviction on the ground addressed in Division 2.

(b) With regard to ineffective assistance of counsel,[4] Holt's counsel's failure to object to the State's initial introduction of evidence of the victim's good character constitutes deficient performance. See *Revere*, 302 Ga. at 49 (2) (a). But again

---

[4] To prevail on a claim of ineffective assistance of this type, a defendant must show both that her trial counsel's performance was deficient and that, absent that deficient performance, a reasonable probability exists that the proceeding's outcome would have been different. If a defendant fails to satisfy one part of this test, then this Court is not required to consider the other.

(Citations omitted.) *Martin v. State*, _ Ga. _ (3) (Case No. S19A0489, decided September 9, 2019).

8

pretermitting whether this failure standing alone meets the test for harm in a claim for ineffective assistance, we turn to Division 2.

2. Holt contends that the trial court erred by allowing evidence of Holt's bad character over his objection, which is subject to appellate review for abuse of discretion. *Smith v. State*, _ Ga. _ (2) (c) (Case No. S19A0936, decided Oct. 7, 2019).

At trial, the State introduced evidence of an unsent text message on Holt's cell phone, dated eight days before the robbery, that was construed at trial as an attempt to defraud an apartment complex. The message stated the following:

> Okay look. Dis da move. Ima get a two bedroom. Me u tyesha johnny. It's gone take to[o] long time to get apt in [the victim's apartment complex]. I'm just gone try Venetian. *Just gotta buy check stubs.* Tomorrow tell Johnny have the whip. Y'all two coming with me to pick that up. First thing first, WE are going shopping. . . .

(Emphasis supplied.) Holt objected to the evidence on the grounds that the whole message was not relevant and that the emphasized sentence amounted to improper character evidence in that it suggested that Holt would use fraud to apply for an apartment. The court allowed the evidence on the ground that it corroborated that Holt was looking for an apartment.

9

In general, "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" OCGA § 24-4-404 (a). Similarly, "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." OCGA § 24-4-404 (b). Further, even when such evidence is admissible, OCGA § 24-4-405 (a) limits character evidence to "testimony as to reputation or . . . testimony in the form of an opinion[,]" unless the "accused testifies to his or her own character" or the "character or a trait of character of a person is an essential element of a charge, claim, or defense." Here, Holt did not testify as to his own character; the character trait was not an essential element of a charge, claim, or defense; and the text introduced a specific bad act, possible fraud, which is not allowed. See *Timmons v. State*, 302 Ga. 464, 469 (2) (a) (807 SE2d 363) (2017).

Further, the trial court erred by holding that the evidence was intrinsic to the alleged crimes. "Evidence is intrinsic to the charged offense . . . if it (1) arose out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with the evidence regarding the charged offense." (Citations and punctuation omitted.) *Baughns v.*

10

*State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016); see also *Clark v. State*, _ Ga. _ (4) (829 SE2d 306) (2019). But the fact that Holt may have attempted to defraud an apartment complex a week earlier does not arise out of the same transaction as his robbery of the victim, nor is it necessary to complete the story of the crime or inextricably intertwined with the evidence of the crime. And the check-stub information could have been redacted from the text message before it was introduced into evidence.

But "even where an abuse of discretion is shown, there are no grounds for reversal if the error did not affect a 'substantial right,' and thus harm, the defendant." *Venturino v. State*, _ Ga. _ (2) (830 SE2d 110) (2019); see also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ."). To make that determination, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so, and we assess whether it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Venturino*, _ Ga. _ (2).

The record shows that the State strongly attacked Holt's character in its closing, in large part by arguing that Holt had to "buy a paystub to apply to an apartment complex":

> [M]uch ha[s] been made as to whether we can trust [the victim] or not, okay. Let's focus your attention for a second to Zacchaeus Holt. Why do we crucify him under the alter of credibility? Here's a 21-year old on social security who's got to buy a paystub to apply to an apartment complex. He goes in and out of a 55-year old dude's house getting him drugs and has two cell phones. Not only that, he's got to buy more guns, gun, gun, gun. I've already got one that's all locked and unloaded. But you know what, at 3:30 [a.m.] I decided to buy me another. What a time to go shopping. What about him do y'all find so credible?

In addition, the case presented to the jury amounted to a credibility contest. Holt and the victim testified to much of the same basic circumstances, with the material variations being who started the altercation that led to the shooting, whether the victim had any cash, and whether Holt took it. The physical evidence somewhat supported the victim's story that Holt dragged him around the apartment after the shooting, leaving multiple bloodstains. But the neighbor testified that the shooting followed, rather than preceded, the argument between the two men. Further, the victim admitted that he stayed up all night smoking crack cocaine and was "high,

12

high, high" at the time of the incident and "kind of out of his mind." The victim also admitted that he had used an alias; that he had a past cocaine habit, which he had apparently recently resumed; that he had ceased going to work very recently; and that he had not paid his October rent bill on time. The victim also contradicted himself on several elements of the encounter, including on how much money was in his pocket. Finally, Holt was only 5'6" and 105 lbs, at the time, and the victim was about 5' 11" and 190-200 lbs, suggesting that the victim could have attempted to overpower Holt.

In sum, we cannot conclude that it is highly probable that the error did not contribute to the verdict. See, e.g., *Harris v. State*, 251 Ga. App. 879, 880 (3) (555 SE2d 485) (2001) (error not harmless during trial for drug possession, where State improperly introduced evidence that defendant had recently been in court on charges of "aggravated robbery"); *Emilio v. State*, 263 Ga. App. 604, 605 (1) (588 SE2d 797) (2003) (where the only evidence linking defendant to drugs, other than accomplice testimony, was his proximity to where drugs were found, the evidence was not overwhelming, and, therefore, there was a reasonable probability that the outcome of the trial would have been different but for trial counsel's deficient performance in introducing character evidence that the defendant was "wanted in five states"). Accordingly, Holt's conviction must be reversed. Because the evidence was sufficient

to sustain the verdict, Holt may be retried. See *Maqrouf v. State*, 349 Ga. App. 174, 180 (1) (b) (825 SE2d 569) (2019).

3. Finally, Holt contends that his trial counsel was ineffective, or the trial court plainly erred, while instructing the jury on justification as a defense.

We first hold that any assertion of ineffective assistance for failure to object to the charge is not likely to occur on retrial, and therefore we need not review that assertion. And the propriety of jury charges at a second trial will be determined at that time. See *Lynn v. State*, 345 Ga. App. 258, 267 (4) (812 SE2d 786) (2018) (physical precedent only).

*Judgment reversed. Miller, P. J., and Reese, J., concur.*