304 Ga. 308
FINAL COPY

S18A0902.  STARKS v. THE STATE.

PETERSON, Justice.

Joshua Starks appeals his conviction of felony murder and other charges stemming from the shooting death of Stenneth Charles during a drug deal.[1] In his sole enumeration of error, Starks argues that he is entitled to a new trial because his trial counsel was ineffective for failing to object to (1) certain testimony as being an improper prior consistent statement and (2) portions of the State's closing argument. Assuming without deciding that trial counsel's performance was deficient in both respects, we conclude that Starks has not

---

[1] Charles was killed on July 4, 2013. A Gwinnett County grand jury indicted Starks for malice murder, three counts of felony murder, aggravated assault, criminal attempt to possess more than one ounce of marijuana, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer. At a September 2015 trial, the jury found Starks not guilty of malice murder but guilty of the lesser included offense of voluntary manslaughter and all other counts. Starks was ultimately sentenced to life for felony murder predicated on possession of a firearm by a first offender probationer and five years concurrent for criminal attempt to possess more than one ounce of marijuana, while the trial court merged or vacated all other charges. Starks filed a motion for new trial on October 12, 2015; the motion was amended by appellate counsel on June 16, 2017. Following a hearing, the trial court denied the motion in an order filed on November 27, 2017. Starks filed a timely notice of appeal, and this case was docketed to this Court's April 2018 term and submitted for a decision on the briefs.

shown any prejudice. We affirm.

Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On July 4, 2013, Starks and a friend went to a Red Roof Inn to buy a quarter-pound of marijuana from Cameron Copeland. Unbeknownst to Starks, Copeland, along with Bobby Barrett and Charles, was planning to sell fake marijuana that Barrett had purchased previously. Copeland, Barrett, Charles, and Starks were all armed for the drug deal; Starks also brought $1,000 for the purchase price.

Starks arrived first, and Copeland arrived shortly thereafter as a back seat passenger in a car that Barrett drove. When Starks approached the car, Copeland told him another person would be arriving soon with the marijuana. Within minutes, Charles and his fiancée, Latasha Davis, arrived in a Lincoln Navigator that Barrett owned. Starks entered the Navigator, and he and Charles discussed the deal. Charles had prepared a cigarette of real marijuana to give the impression that the remainder was real, but, at the crucial moment, he could not find it.

There was conflicting testimony about what happened next. Davis testified that Charles could not find the marijuana cigarette, even after opening

2

the car door and exiting the vehicle to look. When Charles reentered the car, Davis said, Starks pulled his gun, put it to Charles's neck, and said "Hey, bra[h]." Charles responded, "Whoa, man," pulled his own gun, and the gunfight began with each firing "probably" at the same time, according to Davis. Starks, on the other hand, testified that Charles drew his gun first and shot Starks in the right wrist and chest. After being shot, Starks said, he was then able to remove his gun from his jeans pocket and shoot twice at Charles.

At trial, Dr. Carol Terry, the Gwinnett County medical examiner, testified that Charles died from a gunshot wound entering his right upper back and injuring his heart, with the bullet traveling downward from the right side of his body to the left. Terry also examined Starks's medical records and testified that, based on these records, Starks had gunshot wounds to his right forearm and chest, possibly coming from the same bullet. Terry could not determine who shot first, but did testify that both men could have continued shooting after receiving their respective gunshot wounds.

1. Although Starks does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable

3

doubt that he was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Starks's sole contention on appeal is that he was denied effective assistance of counsel at trial because of two failures by trial counsel to object: first, to rebuttal testimony by Davis, and second, to portions of the State's closing argument. We disagree.

On cross-examination, trial counsel elicited Davis's testimony that she was engaged to Charles at the time of the shooting and that she was still close with Charles's mother and always came to court proceedings with her. After Starks's testimony, the State sought to play for the jury a recording of Davis's statement to the police on the night of the incident to show its consistency with her testimony at trial. Trial counsel objected that this would be improper because she had not attacked Davis's credibility. The trial court barred the July 2013 statement as not admissible under OCGA § 24-6-613 (c).

Switching strategies, the State then recalled Davis to the stand, purportedly to rebut Starks's testimony about where he was sitting in the Navigator, how he shot, and who shot first. The trial court allowed this, but specifically noted that the testimony was "not for prior consistent statement."

4

The State prefaced its questioning by referring to Davis having just listened to a recording of her 2013 statement. And several questions elicited Davis's testimony about what she told police in that 2013 statement, including testimony about whether her previous testimony was consistent with that statement. Trial counsel did not object to this testimony. Starks now argues that these parts of Davis's rebuttal testimony amounted to admission of an improper prior consistent statement to which trial counsel should have objected.

He also contends that trial counsel should have objected to the State's closing argument. Specifically, while explaining why there was a trial despite Starks admitting much of what he was accused of, the prosecutor argued to the jury:

> I want you to understand the indictment that he signed up on is the sole reason you're here. . . . The only reason we're here, in truth, is that he signed not guilty on the indictment. He decides whether we go to trial or not. That's the only reason we're here. It's not magic. It's not some unbelievable prophecy how did we get here, if he admits to everything. We're only here because he signed not guilty on the indictment. . . . What is important is that you should understand just because we're here doesn't mean you should go back in that deliberation room and say, you know what, why are we here, why are we in trial? I don't understand. He admitted to everything, maybe I need to look for something, maybe there's something wrong with the State's case. . . . You can still go to trial. That's one of the great things about this country, nothing prohibits anyone from going to trial. It doesn't matter if you leave behind

video, it doesn't matter if you leave behind DNA, it doesn't matter if you drop your gun in the car, you can always go to trial. And that's the only reason we're here is he signed up not guilty on the indictment. There's no magic to it. It's not — there's no loophole, there's no missing link in the State's case.

He's rolling the dice. As I told you at the beginning, we're going to stipulate. You saw a number of stipulations. I can agree to everything, almost everything the defendant said and still get convictions for each of the felony murder counts that I charged.

Following closing arguments, the trial court instructed the jury that closing arguments are not evidence. Starks now argues that this closing argument was an improper and disparaging commentary on his exercise of his constitutional right to a jury trial.

In order to establish that trial counsel was ineffective, Starks must show both that trial counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show prejudice, the defendant must show that a reasonable probability exists that, but for trial counsel's errors, the outcome of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the

facts." Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003) (citation and punctuation omitted). Assuming without deciding that trial counsel performed deficiently by failing to object in both instances, we conclude that Starks is not entitled to a new trial because he cannot show a reasonable likelihood that, but for the failures to object, the outcome of his trial would have been more favorable.

The evidence of Starks's guilt was overwhelming. Even putting aside other evidence, Starks's own trial testimony precludes his success in this appeal. The felony murder statute provides that "[a] person commits the offense of murder when, in the commission of a felony, he . . . causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). In his trial testimony, Starks admitted to committing at least two felonies, in that he admitted to possessing a firearm despite being forbidden from doing so as a first offender probationer at the time of the shooting, and attempting to purchase a quarter-pound of marijuana. See OCGA §§ 16-11-131 (b) (possession of a firearm by a first offender probationer is a felony); 16-13-30 (j) (2) (possession of marijuana is a felony unless quantity is one ounce or less per OCGA § 16-13-2 (b)); 16-13-33 (person convicted of criminal attempt to commit a controlled

substance offense shall be punished by imprisonment "not exceeding the maximum punishment" prescribed for the attempted offense). Starks also admitted to taking the firearm with him to a drug deal with a virtual stranger and intentionally using that firearm to shoot someone during the course of the drug transaction; that testimony alone provides evidence of a sufficient nexus between Starks's illegal gun possession and Charles's death, as well as between the death and Starks's attempted drug purchase. See Harris v. State, 291 Ga. 175, 178 (2) (b) (728 SE2d 178) (2012) (where evidence showed defendant intentionally grabbed his pistol and fired it at the victim, defendant's possession of a firearm as a convicted felon created a foreseeable risk of death); Davis v. State, 290 Ga. 757, 760-761 (4) (725 SE2d 280) (2012) (illegal drug transaction, particularly with armed participants, is foreseeably dangerous and thus a predicate for felony murder); see also Crayton v. State, 298 Ga. 792, 801-802 (784 SE2d 343) (2016) (Blackwell, J., concurring in part and dissenting in part) (to prove felony murder, State must show defendant committed felony "in circumstances that posed a foreseeable risk of death" and "thereby proximately caused" the victim's death).

Indeed, Starks's strategy at trial was not to contest that the State had failed

to prove the required elements of the crimes charged, but to assert self-defense and question why others involved in the putative drug transaction were not charged. But a justification defense was unavailable to Starks. Although Starks essentially argued to the jury that his fatal aggravated assault on Charles was justified, that argument was precluded by Starks's admission that he was committing two additional felonies when he committed the assault. Under OCGA § 16-3-21 (b) (2), force is not justified when a defendant is "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony[.]" OCGA § 16-3-21 (b) (2) applies to all felonies and, although it does not completely eliminate the possibility of a justification defense to felony murder, such a defense requires the jury to find that the underlying felony was justified. See Woodard v. State, 296 Ga. 803, 810-814 (3) (b) & n.10 (771 SE2d 362) (2015). There could be no argument that Starks's drug crime was justified. And the jury could not have found that Starks's illegal gun possession was itself justified given that Starks admitted to possessing the firearm before he even encountered Charles. Compare Austin v. State, 300 Ga. 889, 890-891 (2) (799 SE2d 222) (2017) (approving charge that defendant would not violate prohibition on possession of a firearm as a felon "[w]here,

9

upon a sudden emergency, [he] suddenly acquires actual possession of a pistol for the purpose of defending himself" (punctuation omitted)). Because there is no dispute that Starks shot Charles while committing two felonies, he could not claim self-defense, and the evidence therefore was overwhelming.

Starks asserts that the State's ability to bolster Davis's testimony through presenting her prior statement prejudiced him because Starks and Davis were the only witnesses to who pulled a gun first. But even if it is true that Davis's credibility was bolstered, this argument fails. A different outcome is not a reasonable probability even disregarding Davis's testimony. Given the overwhelming evidence of Starks's guilt, particularly Starks's own testimony, there is no reasonable probability that the trial's outcome would have changed had trial counsel objected to Davis's rebuttal testimony. See Watson v. State, 303 Ga. 758, 762 (2) (d) (814 SE2d 396) (2018) (failure to object to certain testimony did not prejudice defendant where defendant was convicted of felony murder predicated on aggravated assault, two eyewitnesses who knew defendant identified him as the gunman, and defendant did not claim the shooting was unintentional, along with other evidence); Muse v. State, 293 Ga. 647, 652-653 (2) (c) (748 SE2d 904) (2013) (even if failure to object to inaccurate testimony

10

was deficient, there was no prejudice because the State's case did not depend on the allegedly inaccurate testimony).

Starks also cannot show a reasonable probability that the outcome would have been different had his trial counsel objected to the State's closing argument. As explained above, Starks essentially admitted the elements of the crimes for which he was convicted and sentenced, employing a non-viable self-defense strategy. Moreover, the trial court specifically instructed the jury that closing arguments should not be considered as evidence. See Powell v. State, 291 Ga. 743, 748-749 (2) (b) (733 SE2d 294) (2012) (even if failure to object to an improper closing argument was deficient performance, defendant did not show prejudice); Davis v. State, 285 Ga. 343, 347-348 (7) (676 SE2d 215) (2009) (any error in allowing allegedly improper closing argument was harmless where the evidence of guilt was overwhelming and the jury was instructed that closing arguments are not evidence). Therefore, the trial court did not err in rejecting Starks's motion for new trial.

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, and Boggs, JJ., concur.

11

Decided August 20, 2018.

Murder. Gwinnett Superior Court. Before Judge W. Davis.

Lynn M. Kleinrock, for appellant.

Daniel J. Porter, District Attorney, Lee F. Tittsworth, Justin D. Unger, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.