305 Ga. 156
FINAL COPY

S18A1030.  IVEY v. THE STATE.

WARREN, Justice.

Appellant Tito Ivey appeals his convictions for felony murder and possession of a firearm during the commission of a felony in connection with the shooting of Franklin Jones.  On appeal, Ivey challenges the sufficiency of the evidence to support his convictions and raises four claims of ineffective assistance of trial counsel.  We find no merit to Ivey's claims and affirm his convictions.[1]

1.  Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that in late July and early August 2015, Jones, his

---

[1] Jones was killed on August 2, 2015.  On February 16, 2016, a DeKalb County grand jury indicted Ivey for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. Ivey's trial began on October 31, 2016, and on November 7, 2016, the jury found Ivey not guilty of malice murder but guilty of the remaining three charges.  On November 15, 2016, the trial court sentenced Ivey to life in prison for the felony murder conviction and to a five-year suspended sentence on the firearm offense.  The court merged the aggravated assault verdict into the felony murder conviction.  Ivey filed a motion for new trial on November 29, 2016, which was amended by new counsel on August 11, 2017.  The trial court denied the motion for new trial, as amended, on September 19, 2017.  Ivey filed a timely notice of appeal, and the case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

fiancée, and their three children were living in Room 510 on the fifth floor of the Hyatt Place Hotel near Stonecrest Mall in DeKalb County.  On August 1, 2015, Ivey, his wife, their two children, his wife's aunt, and his wife's aunt's fiancé, Michael Simmons, traveled from Harlem, Georgia, to the Atlanta area to celebrate his wife's birthday.  Ivey and his family checked into Room 508 of the Hyatt Place Hotel, and his wife's aunt and Simmons checked into Room 507.  Ivey owned a .380 pistol (and had a carry permit) that he brought with him on the trip for protection.

Ivey, Jones, and Simmons encountered each other at the hotel on the day of Ivey's arrival.  The three men spent several hours that night drinking and talking together on the property, just outside the front door of the hotel.  At some point, Simmons went to his hotel room, leaving Ivey and Jones outside talking.  Between 2:00 and 2:30 a.m. on August 2, 2015, Ivey and Jones entered the hotel lobby and approached the front desk together; they asked the front desk clerk, Tiffany Collins, for some refreshments and she obliged.  Shortly thereafter, Jones said to Ivey, "We have to get this taken care of, finish it up."  Collins then saw Ivey and Jones walk together toward the elevator.  Collins observed that both men smelled of alcohol and had slurred speech, that Jones was walking unsteadily, and that Ivey had red, bloodshot eyes.  She noted that

the two men went in and out of the hotel more than once, but that she never heard them arguing.

The two men went upstairs to the fifth floor, where their rooms were located. Jones's fiancée, Jennifer Liggons, who was asleep in the couple's hotel room, was awakened when she heard the door unlock; she then saw Jones appear in the doorway with Ivey. Jones asked Ivey if he wanted to come into the room, but Ivey refused. Jones said, "Well, I need to get some sleep because I need to get up to go to church in a little bit." Jones stepped back out into the hallway, and the door closed behind him. Liggons did not hear any raised voices or argument. Approximately three minutes after the door to her room closed, Liggons heard a loud noise. She did not get up to check what caused the noise.

Less than 15 minutes after the men left the lobby, Collins received a call from Ivey's wife stating that Jones had tried to assault Ivey and that Jones was dead. Collins went to the fifth floor and observed Jones lying dead outside Ivey's room with a single gunshot wound to his left eye. Jones's room was between 15 and 20 feet down the hall from where his body was found. No weapon was found on or around Jones's person or in his room.

In his initial statement to the police, Ivey said that he and Jones "were on the side of the building drinking alcohol and talking about ways of getting money and making money." Ivey told the police that he got tired and that the two men went up to the fifth floor. When they got there, Jones started following Ivey to his room. Ivey told police he "thought that [Jones] was going to rob him because he kept going under his shirt as if he had a weapon." Ivey then pulled out his gun and shot the victim.

Ivey pursued a theory of self-defense at trial: he admitted that he shot Jones, but contended that he acted in self-defense after Jones charged at him.[2] However, the trial testimony Ivey offered about the night of Jones's shooting was different than the story Ivey initially told police. At trial, Ivey testified to the following: Ivey was outside the hotel with Jones and Simmons on the night of August 1-2 when a limousine pulled up and three attractive women got out. Simmons let them into the hotel because the front door was locked. The women met up inside with two poorly dressed men, and the five of them came out and got into the limousine. Ivey and Simmons joked about the women being prostitutes and the men their pimps. Shortly afterward, Simmons went

_____

[2] Ivey admitted to using his .380 pistol to shoot Jones, and the medical examiner testified that Jones had been shot from a likely distance of six to twelve inches away.

back into the hotel and up to his room, and shortly after that, the two poorly dressed men got out of the limousine and walked back toward the hotel. Jones approached the two men and spoke with them. After speaking with Jones, the two men then went into the hotel. Ivey commented that Jones must have known the two other men and wondered why Jones had not disclosed that fact when Ivey and Simmons had been making jokes about them. Ivey jokingly told Jones that Jones must be in the prostitution business, saying that Jones must be the "ring leader" because he was the cleanest; the other two men were "kind of dirty." Jones became angry and demanded that Ivey go with him to Jones's room, saying, "You ain't going to f**k up my s**t." Ivey declined and, attempting to get away from Jones, went into the hotel. He saw the two poorly dressed men down a hallway near an elevator. Jones also came into the hotel and joined the two men by the elevator. Ivey said that he spoke with Collins at the front desk for a short time and that Jones never "[came] back over to where [he was]." Jones and the other two men "disappeared," and Ivey got on the elevator with another couple to go to his room.

When getting off the elevator on the fifth floor, Ivey ran into Jones, who was "still mad" and said "motherf**ker, there you go." In an attempt to prevent Jones from figuring out what hotel room he was staying in, Ivey

suggested that he and Jones go downstairs. Jones declined and said that Ivey should get Jones some beers from his room. Ivey went into his room and got three beers for Jones. They walked toward Jones's room. When they got there, Ivey handed Jones the beer and thought Jones was going to go into his room. Jones, however, only went halfway in the room and angrily said, "Godda**it, bring your motherf**king ass on in, we can finish." Ivey responded that he did not care about Jones's pimping business and that he and his family were leaving in the morning. Jones was "still upset," saying "motherf**ker, get in here, you know, I know where your kid at, I know where you at, I'll do y'all ass." Ivey did not say anything and started walking to his room. Jones then reached into his room "like he was trying to get something." Ivey thought Jones was reaching for a weapon on a table near the door. Jones again threatened Ivey and his family, and Ivey continued to walk to his room. After a few steps, he saw that Jones "was coming at me with a little charge." Ivey thought Jones might try to kill or rob him, and he shot Jones.

Ivey contends that, in light of his testimony that Jones was the aggressor and that he shot Jones in self-defense, the evidence is insufficient to support his convictions. But Ivey's testimony was at significant odds with his initial statement to the police. That statement did not mention the cause of the

altercation between Ivey and Jones — their involved interaction regarding what he described as the three attractive women and two poorly dressed men — or the argument that occurred at Jones's hotel room door. Moreover, Ivey testified at trial that he believed that Jones, the victim, had a weapon because he saw Jones reaching for something in his hotel room. But in his initial statement to police, Ivey said that he thought Jones was armed because he observed Jones reaching for something under his shirt. Ivey's testimony also conflicted with Collins's testimony that she did not see the group of three women or the two other men come into the hotel that evening; that Ivey and Jones came to the front desk together before going upstairs; and that Jones spoke to Ivey at the front desk and was not angry. Similarly, Jones's fiancée testified that she did not hear any angry words between Jones and Ivey when they were together at the door of her hotel room, which stands in stark contrast to the angry exchanges that Ivey described in his testimony.

As we have explained before, "'[i]ssues of witness credibility and the existence of justification are for the jury to determine, and it is free to reject a defendant's claim that he acted in self-defense.'" *Terrell v. State*, 304 Ga. 183, 184 (815 SE2d 66) (2018) (citation omitted). And, on appeal, "'this Court does not resolve conflicts in trial testimony or reweigh the evidence.'" *Shaw v.*

*State*, 292 Ga. 871, 872 (742 SE2d 707) (2013) (citation omitted). Viewing the evidence in the light most favorable to the verdicts and bearing these principles in mind, we conclude that the evidence presented against Ivey was sufficient to authorize a rational jury to find beyond a reasonable doubt that Ivey was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Ivey contends that trial counsel provided constitutionally ineffective assistance in numerous respects. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the

burden of overcoming this presumption, a defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) Ivey first argues that trial counsel was ineffective in failing to object to the prosecutor's closing argument that Ivey was under the influence of both pain medication and alcohol when he shot Jones. Ivey claims this argument was improper because there was no evidence that Ivey had consumed pain medication on the day of the shooting. Pretermitting whether counsel performed deficiently in failing to object to this argument, Ivey has failed to carry his burden to show prejudice. Both Ivey and his wife testified that Ivey had back surgery in March 2015, was prescribed a number of pain medications

as a result, and took them when needed. Ivey also admitted that he drank beer and shots of brandy over the course of the evening, and the hotel desk clerk testified that she smelled alcohol on Ivey, that his speech was slurred, and that his eyes were bloodshot. Moreover, the trial court charged the jury that closing arguments should not be considered as evidence and that it was the jury's responsibility to decide the case based on the evidence presented in court. In light of these considerations, we conclude that Ivey cannot show a reasonable probability that the outcome of the trial would have been different if his trial counsel had objected to the prosecutor's closing argument. See *Strickland*, 466 U. S. at 694; *Starks v. State*, 304 Ga. 308, 313 (818 SE2d 507) (2018) (holding that the defendant could not show prejudice on his ineffective assistance claim that trial counsel should have objected to the State's closing argument, in part because the trial court charged the jury that closing arguments should not be considered as evidence). Ivey's first claim of ineffective assistance therefore fails.

(b) Ivey next claims that counsel provided ineffective assistance by failing to object when the prosecutor improperly shifted the burden of proof to Ivey by arguing in closing that, "if there was something that Michael Simmons or Flora Weathers could have said that would have contributed to the

defendant's self-defense claim, they have subpoena powers."[3] Ivey, however, "did not raise this ineffective assistance claim when [he] was represented by new counsel in [his] motion for new trial and the trial court did not rule on it, so the claim was not preserved for review on appeal." *Gomez v. State*, 301 Ga. 445, 460 (801 SE2d 847) (2017).

(c) Ivey also claims that Detective Brown improperly attacked Ivey's credibility on direct examination, and that trial counsel provided ineffective assistance by failing to object. We find no merit to this claim.

In one instance of which Ivey complains, the prosecutor asked Detective Brown whether he had noticed any differences in the way Ivey described his interaction with Jones at the door of his hotel room shortly before the shooting. Brown said that he had, and testified that, initially, Ivey described Jones as "basically asking [Ivey] to come into the room or come have a drink," but that, when Brown asked Ivey whether Jones threatened him, Ivey's description "changed from more of [an] asking to come into the room to more of Mr. Jones

---

[3] Weathers was a guest staying on the fifth floor of the hotel at the time of the crimes. As explained above, Simmons was the fiancé of Ivey's wife's aunt. Ivey's counsel extensively cross-examined the lead detective, C. L. Brown, about information that Weathers and Simmons might have had and about why the police did not interview either one of them. In addition, in closing, trial counsel discussed the failure to interview Simmons and Weathers in detail and relied on that failure to argue that Detective Brown was a "crap detective."

demanding him to come into the room." In the second instance, Brown testified that, when he told Ivey that the shooting was recorded on hotel video surveillance,[4] Ivey's "demeanor changed . . . you could tell that the wheels were turning."

Detective Brown's testimony that Ivey changed his statement when Brown asked him if Jones threatened him did not constitute an improper comment on Ivey's truthfulness; it merely pointed out the differences in Ivey's statement. See *Jones v. State*, 299 Ga. 40, 43-44 (785 SE2d 886) (2016) (explaining that it is not an improper comment on credibility for a witness to comment on the differences in his testimony and that of another witness so long as the witness does not "'testify as to the *veracity* of the other witness'" (citation omitted; emphasis in original)). Because an objection to this part of Brown's testimony would have been meritless, trial counsel did not perform deficiently in failing to object. See *Hightower v. State*, 304 Ga. 755, 759 (822 SE2d 273) (2018).

Moreover, with regard to Detective Brown's testimony about Ivey's change in demeanor, trial counsel testified at the hearing on the motion for new

---

[4] The hotel had a new video surveillance system, but it had not been set up properly and was not recording at the time of the crimes.

trial that he did not think that testimony was objectionable. Because Brown's testimony was not a direct comment on Ivey's veracity, see *Harris v. State*, 304 Ga. 652, 657 (821 SE2d 346) (2018) (holding that, because a detective did not directly comment on a witness's veracity, the detective did not improperly comment on the credibility of the witness), Ivey has not shown that "no reasonable lawyer" would have failed to object to Brown's testimony. *Davis*, 299 Ga. at 183. As a result, Ivey has not overcome the strong presumption that counsel performed reasonably, see id., and his claim of ineffective assistance therefore fails.

(d) Ivey further contends that trial counsel provided ineffective assistance by failing to call as a witness a forensic toxicologist whose report showed that Jones had a blood alcohol level of 0.217 at the time of his death. Ivey contends that this report would have supported his claim that Jones was acting aggressively when Ivey shot him. Pretermitting whether trial counsel performed deficiently, we conclude that Ivey has failed to show prejudice on this claim.

A toxicology report containing evidence of a victim's drug or alcohol use is only relevant and admissible if the defendant also proffers evidence about how the victim's drug or alcohol use tended to affect his behavior. See

*Mondragon v. State*, 304 Ga. 843, 846 (823 SE2d 276) (2019) (holding that a toxicology report showing the victim's blood alcohol level at the time he was killed was not admissible to corroborate the defendant's claim that the victim was acting aggressively because the defendant did not "proffer any evidence about how [the victim's] drinking tended to affect his behavior"); *Gill v. State*, 296 Ga. 351, 352 (765 SE2d 925) (2014) (holding that a toxicology report was inadmissible because the defendant made no showing as to "how any drugs that were allegedly in [the victim's] system may have been affecting his behavior at the time of his fatal encounter with [the defendant]").

Here, Ivey offered no evidence at the motion for new trial hearing about how Jones's drinking affected his behavior; in particular, Ivey offered no evidence that Jones acted aggressively when he drank alcohol. In the absence of that showing, Jones has failed to demonstrate that the toxicology report would have been admissible at trial. Therefore, even assuming counsel was deficient by failing to call the toxicology expert, Jones still cannot show that he was harmed by his trial counsel's failure to seek introduction of the toxicology report. See *Clark v. State*, 299 Ga. 552, 555 (787 SE2d 212) (2016) (holding that the defendant failed to show prejudice on his claim that trial counsel was ineffective in failing to introduce certain evidence at trial because

the defendant failed to show on motion for new trial that that evidence would have been admissible at trial). Moreover, the toxicology report would have been cumulative of other evidence introduced at trial: Jones's fiancée, Ivey, and Ivey's wife all testified that Ivey and Jones engaged in an evening of drinking on the night of Jones's death, and the front desk clerk testified that Jones smelled of alcohol, had slurred speech, and was walking unsteadily. Accordingly, Ivey has failed to show that there is a reasonable probability that the admission of the report itself, unaccompanied by any evidence as to how alcohol use affected Jones's behavior, would have changed the result of the trial, see *Eller v. State*, 303 Ga. 373, 384 (811 SE2d 299) (2018), and his claim of ineffective assistance fails.

(e) Finally, even "considering the combined effect of the deficiencies we have [pretermitted] in the discussion above, we conclude that those deficiencies would not in reasonable probability have changed the outcome" of Ivey's trial. *Barrett v. State*, 292 Ga. 160, 189 (733 SE2d 304) (2012).

Judgment affirmed. All the Justices concur.

Decided February 18, 2019.

Murder. DeKalb Superior Court. Before Judge Flake.

Debra K. Jefferson, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.