**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 27, 2020**

# In the Court of Appeals of Georgia

A20A1076. THELUSMA v. THE STATE.                          DO-037C

PER CURIAM.

A jury found Jafney Thelusma guilty of three counts of violating the Street Gang and Terrorism Prevention Act (Counts 3-5) and one count each of fleeing or attempting to elude an officer (Count 6), theft by receiving stolen property (Count 7), possession of a firearm by a first offender probationer (Count 8), discharging a gun near a highway or street (Count 9), and driving with a suspended license (Count 10).[1] The trial court entered a written sentence on these convictions, and Thelusma moved for a new trial. The trial court denied the motion as to Counts 6 and 9-10, but granted it as to Counts 3-5 and 7-8. The trial court also entered an order of nolle prosequi as

---

[1] The jury acquitted Thelusma of two counts of violating the Street Gang and Terrorism Prevention Act (Counts 1-2).

to Counts 3-5 and 7-8. Thelusma filed an appeal, but this Court dismissed it as interlocutory because the trial court had not entered a new sentencing order.[2] The trial court subsequently entered a new sentencing order, and the appeal has now been re-docketed.

On appeal, Thelusma argues that the evidence was insufficient to support his convictions on Counts 6 and 9-10, and that the trial court erred in resentencing him. For the following reasons, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Here, the evidence at trial showed that around 8:00 or 8:30 p.m. on August 17, 2012, Thelusma was driving his vehicle in an apartment complex when he engaged

---

[2] See Case No. A19A2306 (Aug. 23, 2019).

[3] (Punctuation omitted.) *Stillwell v. State*, 329 Ga. App. 108, 108 (764 SE2d 419) (2014).

2

in a dispute with Josteen Mosley, the security guard for the complex. Several witnesses testified that Thelusma fired gunshots as he was driving away from Mosley at the exit of the apartment complex. However, Thelusma testified that: Mosley threatened him and pointed a gun in his face; he heard gunshots as Mosley was heading away from him; and he only fired his gun into the air in self-defense.

Nearby police officers, including Deputy Matthew Holbrook of the Newton County Sheriff's Department, observed or heard the gunshots, and multiple police cars immediately began pursuing Thelusma with blue lights and sirens activated. Thelusma fled from the officers — reaching speeds of approximately 90 miles per hour in a residential neighborhood with a speed limit of 25 miles per hour — before wrecking the vehicle and fleeing on foot. Although Thelusma subsequently reported that his vehicle had been stolen, he admitted at trial that he was driving. Thelusma testified that he did not know police officers were pursuing him, and he believed Mosley had placed a portable siren on his own vehicle and was pursuing Thelusma.

1. Thelusma argues that the evidence was insufficient to support his convictions. We disagree.

(a) Regarding his conviction on Count 6 for fleeing or attempting to elude an officer, Thelusma argues that the State did not prove Deputy Holbrook's uniform

prominently displayed his badge of office and that his vehicle was appropriately marked as an official police vehicle. However, the evidence belies this argument.

OCGA § 40-6-395 (a) provides:

> It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

In *Cook v. State*,[4] the defendant challenged his conviction for fleeing or attempting to elude an officer by arguing that the State failed to show the pursuing officer was in uniform and driving an appropriately marked vehicle. This Court held that the evidence supported the conviction, because the officer testified that he was in his patrol car when he signaled the defendant to stop and that he activated his blue lights and siren, and because there was no suggestion that the officer was not in

---

[4] 180 Ga. App. 877 (350 SE2d 847) (1986).

uniform in an appropriately marked vehicle.[5] This Court explained that the object of

OCGA § 40-6-395 (a) is to

> ensure the offense of "attempting to elude" is not found unless the evidence allows a rational jury to conclude beyond a reasonable doubt that the person fleeing could not reasonably mistake the pursuing police car for something else. . . . When the evidence shows that the officer was on patrol and in his patrol car and had his blue light flashing and siren sounding, the jury may rationally conclude the elements of the code section are proved beyond a reasonable doubt.[6]

Here, Deputy Holbrook testified that at the time he heard the gunshots at the apartment complex, saw Thelusma's vehicle, and began to pursue Thelusma, he was on duty and responding to an incident across the street from the complex. Other witnesses testified that Holbrook was in a patrol car, and Holbrook testified that he activated his blue lights and siren during the pursuit. Two other patrol cars joined in the pursuit with lights and sirens activated. Under these facts, the jury was authorized

---

[5] Id. at 878 (1).

[6] Id. at 878-879 (1).

5

to find that Thelusma was aware he was fleeing from police and was therefore guilty of fleeing or attempting to elude.[7]

(b) Regarding his conviction on Count 9 for discharging a gun near a highway or street, Thelusma argues that the evidence showed he had legal justification to fire his gun because he acted in self-defense while responding to Mosley pointing a gun in his face and the sound of gunshots. However, the evidence supports this conviction.

Multiple witnesses, including the security guard Mosley, testified that only Thelusma fired shots during the dispute and that Mosley did not brandish his gun or threaten Thelusma. In addition, the only shell casings discovered at the scene matched ammunition recovered from Thelusma's gun. The jury was entitled to credit this testimony and evidence over Thelusma's claim that he acted in self-defense because

---

[7] See *Cook*, 180 Ga. App. at 878-879 (1). See also *English v. State*, 261 Ga. App. 157, 157-159 (1) (582 SE2d 136) (2003) (evidence supported conviction for fleeing or attempting to elude where officer was on duty in patrol car and activated his blue lights and siren while pursuing defendant); *Ray v. State*, 233 Ga. App. 162, 164-165 (1) (503 SE2d 391) (1998) (evidence supported conviction for fleeing or attempting to elude, despite defendant's argument that State failed to prove officer was in uniform, displaying his badge, and driving a marked police car, because the pursuit occurred at nighttime and officer was in a patrol car with his lights and siren activated).

"[w]itness credibility is to be determined by the jury, as is the question of self-defense when there is conflicting evidence on the issue."[8] Similarly, "the existence of justification [is] for the jury to determine, and it is free to reject a defendant's claim that he acted in self-defense."[9] Accordingly, the evidence supports this conviction.

(c) Regarding his conviction on Count 10 for driving with a suspended license, Thelusma argues that the State did not prove the road he drove upon outside of the apartment complex was an improper road for him under the conditions of his suspended or limited license. Once again, the evidence supports this conviction.

"In order to establish the offense of driving with a suspended license, the State must show that the accused was driving, that his license was suspended, and that the accused had received actual or legal notice of the suspension."[10] Here, Thelusma admitted that at the time of the incident his driver's license was suspended and that he was driving to the apartment complex to pick up a friend; and other evidence

---

[8] (Citation omitted.) *Slaughter v. State*, 278 Ga. 896, 896-897 (608 SE2d 227) (2005).

[9] (Punctuation omitted.) *Ivey v. State*, 305 Ga. 156, 159 (1) (824 SE2d 242) (2019).

[10] (Punctuation omitted.) *Keller v. State*, 247 Ga. App. 599, 601 (2) (544 SE2d 511) (2001). See also OCGA § 40-5-121 (a).

showed he received notice that under the conditions of his suspended or limited license, he was only allowed to drive to and from work and in other limited situations, which did not include picking up a friend. During closing argument Thelusma's attorney essentially conceded that Thelusma had been driving on a suspended license. Thus, the jury was authorized to find that Thelusma drove with a suspended license.[11]

2. In 2015, the trial court entered Thelusma's original sentence of fifteen years, with five years to serve in prison and the remaining ten years on probation. All sentences ran concurrently. After the trial court granted Thelusma's motion for new trial as to several charges and entered orders of nolle prosequi on those charges, this Court dismissed his subsequent appeal as interlocutory and directed the trial court to enter a new written sentence.[12] Following a resentencing hearing, the trial court sentenced Thelusma to a total of three years with one year to serve in prison.

---

[11] See *Wilson v. State*, 278 Ga. App. 420, 422 (629 SE2d 110) (2006) (evidence supported conviction for driving with a suspended license, where witness testified that defendant's license was suspended and that defendant received notice of the suspension, officer who pulled defendant over testified that defendant was driving, and defendant admitted to officer that he was not supposed to be driving); *Noeske v. State*, 181 Ga. App. 778, 779 (1) (353 SE2d 635) (1987) (evidence supported conviction for driving with a suspended license where defendant admitted to officer at the time of his arrest that his license was suspended).

[12] See Case No. A19A2306 (Aug. 23, 2019).

Specifically, the court sentenced Thelusma to one year in prison for fleeing or attempting to elude an officer (Count 6), one year of probation for discharging a gun near a highway or street (Count 9), and one year of probation for driving with a suspended license (Count 10), with all sentences to run consecutively.

On appeal, Thelusma argues that the trial court erred in resentencing him because he had already begun serving his original sentence. He also argues that this Court's order dismissing his prior appeal limited the trial court to reentering its original sentence with regard to Counts 6, 9, and 10, and that the trial court improperly increased his sentence at resentencing.

With regard to the trial court's authority to resentence, a trial court has discretion in fashioning a sentence that is fair and just.[13] "Where that [sentencing] scheme unravels due to elimination of some of the original counts, the judge should be given a wide berth to fashion a new sentence that accurately reflects the gravity of the crimes for which the defendant is being resentenced."[14] Accordingly, the trial court here was free to resentence Thelusma after it entered its order of nolle prosequi

---

[13] See *State v. Hudson*, 293 Ga. 656, 660 (748 SE2d 910) (2013).

[14] Id.

on multiple counts. Nothing in this Court's order in Case No. A19A2306 limited the trial court's authority in this regard.

Moreover, the new sentence entered by the trial court did not increase Thelusma's sentence; it reduced it. Whereas Thelusma was originally sentenced to a total of fifteen years with five years to serve in prison, he was resentenced to a total of three years with one year to serve in prison. Also, whereas Thelusma was originally ordered to pay $3,000 in fines, his new sentence only included $2,000 in fines.

However, we agree with Thelusma that the trial court erred to the extent it limited his credit for time served. Based on the record, it appears that Thelusma completed his original five-year term of imprisonment. The exact time spent in prison is not clear from the record, but Thelusma stated that he was sentenced in April 2015 and served time in prison before being paroled in 2017. It is also not clear whether Thelusma began serving the probationary term of his original sentence upon his release from prison. The trial court, nevertheless, stated at resentencing that Thelusma was entitled to credit for time served only for the one-year prison portion of the new sentence, and not the two-year probation term. The trial court said that Thelusma had

never started probation so he was required to serve the full two years of probation beginning from the date of the resentencing hearing. In so doing, the trial court erred.

Under OCGA § 17-10-11 (a), a person is entitled to full credit for time "spent in confinement awaiting trial and for each day spent in confinement, in connection with and resulting from a court order entered in the criminal proceedings for which sentence was imposed . . . ." Here, Thelusma spent more than one year in prison following his original sentence, and he is entitled to credit for all the time he served in prison or on probation against his new sentence, including the two years of probation in his new sentence.[15]

We nevertheless conclude that reversal of his conviction is not required. The new written sentence entered by the trial court does not purport to limit Thelusma's credit for time served, and "the written sentence controls over the trial court's oral pronouncements regarding sentencing."[16] To the extent the trial court's oral

---

[15] Cf. *Dickey v. State*, 157 Ga. App. 13, 15 (2) (276 SE2d 75) (1981) (a probationer in jail awaiting a revocation hearing is still considered to be serving his probationary sentence and such time must be deducted from the original sentence); see also *Franklin v. State*, 236 Ga. App. 401, 402 (1) (512 SE2d 304) (1999) (a probationer must receive credit for time served on probation).

[16] *Grant v. State*, 195 Ga. App. 463, 465 (2) (393 SE2d 737) (1990).

11

pronouncement purported to limit the credit given for time served, the trial court is directed that credit for time served shall be extended for any time Thelusma spent either incarcerated or on probation following the original conviction and sentence.

*Judgment of conviction affirmed and case remanded with direction. Division Per Curiam. All Judges concur.*