300 Ga. 889
FINAL COPY

S17A0284. AUSTIN v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Eric Robius Austin was found guilty of malice murder, felony murder, possession of a firearm by a convicted felon, and various other offenses in connection with the shooting death of his girlfriend, Sade Danmola.[1] On appeal, Austin contends that the evidence presented at trial was insufficient to support the verdict and that the trial court erred by failing to

---

[1] On July 1, 2011, Austin was indicted for malice murder, felony murder predicated on aggravated assault, felony murder based on possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a February 28-March 2, 2012 jury trial, Austin was found guilty on all counts. On March 2, 2012, Austin was sentenced to life imprisonment for malice murder and five consecutive years for possession of a firearm during the commission of a felony. The felony murder counts were vacated by operation of law (see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the remaining counts were merged with the malice murder count for sentencing purposes. Austin filed a motion for new trial on March 15, 2012, which he amended on August 19, 2013. The trial court denied the motion on May 20, 2015. Following the payment of costs, Austin's timely appeal was docketed to the term of this Court beginning in December 2016 and submitted for decision on the briefs.

instruct the jury on "sudden emergency" in connection with the possession of a firearm by a convicted felon charge. For the reasons that follow, we affirm in part, vacate in part, and remand for resentencing on the count of possession of a firearm by a convicted felon.

1. Viewed in the light most favorable to the jury's verdict, the record shows that Austin, a convicted felon, lived in an apartment with Danmola and the couple's two-month-old son. However, Austin divided his time between staying at the apartment that he shared with Danmola and staying at the home of Sacagawea Bolton, another woman with whom he had also fathered a child. On the morning of March 27, 2011, Austin was sleeping at Bolton's house when he received a call from Danmola. He then went to the apartment that he shared with Danmola to look after the couple's infant son while Danmola went to work for a scheduled 9:00 a.m. shift at McDonald's. Danmola arrived at work, but her 9:00 a.m. shift was rescheduled, so she returned home. When she walked into the apartment, she got into an argument with Austin. During the argument, a neighbor overheard Danmola plead, "Please don't kill me. I don't want to die here." Austin then shot Danmola in the abdomen with a .380 pistol.

Austin called 911, saying that his girlfriend had been shot, but he then fled

the scene before officers arrived, leaving his infant son on the floor in the back bedroom. Although there were no signs of forced entry, officers had difficulty entering the apartment because someone had placed a "burglar bar" against the front door of the apartment. When officers were able to enter the apartment, they found Danmola, drifting in and out of consciousness, lying in a fetal position on the living room floor. Danmola was taken to the hospital, where she died shortly thereafter.

The evidence was sufficient to enable a rational trier of fact to find Austin guilty of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was free to reject Austin's testimony that he had mistakenly shot Danmola, believing that she was a burglar as she entered the apartment bedroom. See, e.g., Dean v. State, 273 Ga. 806, 807 (1) (546 SE2d 499) (2001) ("This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.")

2. Austin claims that the trial court erred by failing to give his requested jury instruction on "sudden emergency," contending that at least some evidence

3

showed that he only came into possession of a handgun in order to defend himself from a sudden attack. See Cauley v. State, 260 Ga. 324, 326 (2) (c) (393 SE2d 246) (1990). Specifically, Austin requested that the trial court charge the jury:

> Where, upon a sudden emergency, one suddenly acquires actual possession of a pistol for the purpose of defending himself, if you find that to have been the purpose, [Austin] would not be in violation of any law prohibiting a felon from being in possession of a firearm.

The charge requested tracks the language that this Court approved in Cauley, supra, and is an appropriate charge to be given regarding a defendant's use of force to defend himself where that defendant otherwise would be prohibited from asserting self-defense due to having been engaged in the felony of possessing a firearm at the time that he was defending himself.[2] Id. at 326 (2)

---

[2] Both the State and Austin's post-trial counsel erroneously assert on appeal that the "sudden emergency" charge requested below relates to "sudden emergency" charges that are given in civil tort cases and that are not appropriate for criminal cases. MARTA v. Mehretab, 224 Ga. App. 263, 264 (1) (480 SE2d 310) (1997) (In civil tort cases, "[t]he defense of emergency is not available unless the evidence shows that there has been a sudden peril caused by circumstances in which the defendant did not participate and which offered him a choice of conduct without time for thought so that negligence in his choice might be attributable not to lack of care but to lack of time to assess the situation. . . . The doctrine requires that the person confronted by the emergency

(c). Indeed, the charge provides "a legal theory upon which the jury could acquit, [if] it [chooses] to do so, notwithstanding [the defendant's] felonious status occasioned by his possession of the firearm." Id.

However, this does not mean that the trial court erred by failing to give the requested charge here. "[A] trial court does not err by failing to give a jury charge where the requested charge is not adjusted to the evidence presented at trial." (Citation and punctuation omitted.) Young v. State, 327 Ga. App. 852, 856 (4) (a) (761 SE2d 801) (2014). See also, e.g., Whitaker v. State, 269 Ga. 462 (6) (499 SE2d 888) (1998). Here, based on Austin's own testimony, he did not suddenly acquire actual possession of the gun that he used to shoot Danmola while trying to defend himself. See Cauley, supra. To the contrary, he claimed that he already had a gun that he pointed at the bedroom door of the apartment when he heard footsteps coming toward the door. He then claimed that he fired

have the opportunity to exercise one of several reasonable alternative courses of action. In the absence of such factors, there can be no conduct to which to apply the standard and the doctrine is inapplicable.") (emphasis omitted); Meeks v. State, 216 Ga. App. 630, 631 (1) (455 SE2d 350) (1995) ("The charge of sudden emergency [applicable in civil tort cases] is not appropriate in a criminal case."). However, the criminal jury charge on sudden emergency that was approved by this Court in Cauley and that was actually requested below has nothing to do with the sudden emergency charges given in civil tort cases.

his gun as soon as he saw the doorknob turning on the bedroom door. Austin provided no evidence of any sudden emergency that caused him to suddenly possess a firearm to defend himself; rather, the evidence he presented showed, at most, that he already possessed a firearm that he chose to use before being placed in any situation that required him to actually defend himself. The trial court did not err by refusing to give Austin's requested charge on sudden emergency.

3. While the trial court did not err with respect to the legal issues raised by Austin in this appeal, it did err by purporting to merge the count of possession of a firearm by a convicted felon into the malice murder count against Austin for sentencing purposes. Indeed, "possession of a firearm by a convicted felon does not merge into a conviction for malice murder." Chester v. State, 284 Ga. 162, 162 (1) (664 SE2d 220) (2008), overruled on other grounds by Williams v. State, 287 Ga. 192, 194 (695 SE2d 244) (2010), and Harper v. State, 286 Ga. 216, 218 (1) (686 SE2d 786) (2009). "[A]s no merger occurred, [Austin] should have been sentenced on [the possession of a firearm] count." Hulett v. State, 296 Ga. 49, 55 (2) (b) (766 SE2d 1) (2014). Accordingly, we vacate the portion of the sentence purporting to merge the

6

possession of a firearm by a convicted felon count into the malice murder count and remand this case to the trial court for resentencing on the possession of a firearm count.

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided April 17, 2017.

Murder. Fulton Superior Court. Before Judge Dempsey.

Edward V. Silverbach, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, F. McDonald Wakeford, Lyndsey H. Rudder, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.