306 Ga. 367
FINAL COPY

S19A0367.  CLARK v. THE STATE.

BOGGS, Justice.

Following a jury trial, Arthur Lawton Clark was convicted of felony murder predicated on possession of a firearm by a convicted felon and aggravated assault in connection with the shooting death of his brother-in-law, Sonny Barlow.[1] He raises the following

---

[1] The crimes occurred on May 12-13, 2015. On June 1, 2015, a Dodge County grand jury indicted Clark for malice murder, felony murder predicated on aggravated assault, aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, possession of a firearm by a convicted felon, and manufacture of marijuana. Clark was tried in October 2016, and a jury found him guilty of the lesser included offense of voluntary manslaughter as to malice murder, as well as felony murder predicated on aggravated assault, aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, and possession of a firearm by a convicted felon. The trial court entered an order of nolle prosequi as to the manufacture of marijuana charge and sentenced Clark to life imprisonment for felony murder predicated on possession of a firearm by a convicted felon, plus 20 years to serve concurrently for aggravated assault. The trial court noted that the voluntary manslaughter and felony murder predicated on aggravated assault convictions were vacated by operation of law and merged the possession of a firearm by a convicted felon count with the corresponding felony murder count. On October 17, 2016, Clark filed a motion for new trial, which he amended on December 1, 2017. The trial court denied his motion on April 30, 2018. Clark filed a timely notice of appeal, and the case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

enumerations of error: (1) the trial court erred in denying his motion for a new trial because the State failed to disprove his affirmative defense of justification based on self-defense; (2) the trial court erred in refusing to give his requested charges on sudden emergency and self-defense; (3) the trial court erred in admitting into evidence documentation of his prior conviction for aggravated cruelty to animals; and (4) the trial court erred in admitting testimony about a prior incident. After review, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the record shows as follows. Clark and the victim, Sonny Barlow, were brothers-in-law; Mr. Barlow was married to Clark's sister, Susan Barlow ("Ms. Barlow"). The Barlows lived with Clark's and Ms. Barlow's mother at a house on the mother's property in Dodge County.

In 2012, Clark pushed Ms. Barlow against a door at the Barlow residence and hit her three times. Ms. Barlow obtained a family violence protective order that barred Clark from her house for 12 months. In 2013, Clark separately was convicted and sentenced

after pleading guilty to aggravated cruelty to animals, making him a convicted felon. In 2014, Clark obtained a .22-caliber pistol that his mother had purchased some years earlier. He brought the pistol to the Barlow residence whenever he visited.

Around lunchtime on May 12, 2015, Clark went to the Barlow residence to see his mother and to bring her some lunch. He did not bring his gun inside because he did not see Mr. Barlow's vehicle at the house. Clark returned to the Barlow residence later that evening, hoping to visit with his mother again. When he arrived, he saw that Mr. Barlow's vehicle was at the house, so he tucked his .22-caliber pistol under his shirt. Ms. Barlow and their mother were inside, and Mr. Barlow was outside at his dog pen.

Ms. Barlow told her mother that Clark was there to visit, and her mother replied that she did not feel up to the visit, so Ms. Barlow told Clark that she and her husband each needed to take a shower and suggested that Clark leave. Mr. Barlow then came into the house and eventually told Clark that he needed to leave, but Clark did not leave. Instead, he and Mr. Barlow got into an argument with

3

raised voices. Clark finally got up and moved toward the back door when Mr. Barlow pushed Clark, causing him to trip on the back door threshold and fall onto the porch deck, hurting his leg. When Clark got back on his feet, he and Mr. Barlow continued arguing, and Ms. Barlow again asked Clark to leave. Clark and Mr. Barlow eventually moved off the porch toward Clark's car. They were no longer arguing, and it appeared that Clark was going to leave peacefully, when Clark suddenly reached under his shirt, pulled out his pistol, and shot Mr. Barlow twice. Clark got in his car and drove away, throwing out the gun on the side of a road. Ms. Barlow rushed to dial 911. In the back yard of the Barlow residence, law enforcement officers found Mr. Barlow, who appeared to have been shot twice in the chest, and two .22-caliber shell casings.

Clark testified at trial and admitted that he shot Mr. Barlow multiple times and that Mr. Barlow did not have a gun. No witness substantiated Clark's claim that Mr. Barlow was about to attack him. Forensic evidence was consistent with Ms. Barlow's testimony that Clark and Mr. Barlow were standing three or four feet apart

4

when Clark fired. The two chest wounds, including the one fatal wound, showed no stippling or powder burns, and the medical examiner testified that they were inflicted at an indeterminate or distant range. Further, an agent of the Georgia Bureau of Investigation who responded to the crime scene testified that he saw no sign of a struggle. Another GBI agent who photographed Clark after his arrest testified that he did not notice or document any injuries to Clark's neck, chest, or rib area. He also testified that nothing on Clark's clothes at the time of arrest indicated any kind of a struggle or physical altercation.

After receiving a "Be On the Look Out" notification for Clark's car, a Dodge County Sheriff's Deputy saw Clark's car, performed a traffic stop, searched Clark, and found no weapon. Officers later searched Clark's residence, pursuant to a search warrant, and recovered a label and price tag for a .22-caliber semi-automatic pistol and .22-caliber ammunition that appeared to match the shell casings recovered from the crime scene.

We conclude that the evidence presented at trial and

5

summarized above was sufficient to enable a rational trier of fact to find Clark guilty of the crimes of which he was convicted beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). The jury was free to reject Clark's testimony that he shot Mr. Barlow in self-defense, believing that Mr. Barlow was about to attack him. And Ms. Barlow testified that she saw Clark, without provocation, draw his weapon and shoot Mr. Barlow, who was unarmed. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Dean v. State*, 273 Ga. 806, 807 (1) (546 SE2d 499) (2001) ("This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.").

2. Clark contends that the trial court erred in refusing to give his requested instructions on sudden emergency and self-defense. Specifically, Clark requested that the trial court instruct the jury, "Where upon a sudden emergency, one suddenly acquires actual

6

possession of a pistol for the purpose of self defense, if you find that to have been the purpose, then he would not be in violation of any law prohibiting a felon from being in possession of a firearm." *Cauley v. State*, 260 Ga. 324, 326 (2) (c) (393 SE2d 246) (1990). Clark also requested that the trial court instruct the jury: (1) that "[a] felon would not be in violation of the firearm possession statute if he was found to be in possession of a firearm for purpose of self-defense"; (2) that "where the Defendant acts in self-defense, the jury is not permitted to find him guilty of the underlying felony, and accordingly [he] cannot be found guilty of felony murder"; and (3) that "[a] convicted felon is justified in possessing a weapon if he reasonably believed it was the only way to prevent his own imminent death or bodily injury."

Clark did not object to the charge as given, however, so we review only for plain error. See OCGA § 17-8-58 (b). In *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011), this Court adopted the federal plain error standard, which has four prongs:

> First, there must be an error or defect — some sort

7

of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis in original.) Id. at 33 (2) (a).

Here, there was no clear or obvious error. A charge on sudden emergency may be appropriate when a defendant, who is on trial for felony murder predicated on possession of a firearm by a convicted felon, otherwise could not successfully assert self-defense because he was engaged in the felony of possessing a firearm at the time that he was defending himself. *Austin v. State*, 300 Ga. 889, 891 (2) (799 SE2d 222) (2017). However, "[a] trial court does not err by failing to give a jury charge where the requested charge is not adjusted to the evidence presented at trial." (Citation and punctuation omitted.) Id.

8

Thus, a sudden emergency charge is not required where the defendant "did not suddenly acquire actual possession of the gun that he used to shoot [the victim] while trying to defend himself," but instead "already possessed [the] firearm that he chose to use before being placed in any situation that required him to actually defend himself." Id. at 891-892 (2).

Clark "provided no evidence of any sudden emergency that caused him to suddenly possess a firearm to defend himself." *Austin*, 300 Ga. at 891-892. Clark's own testimony was that he acquired the .22-caliber pistol that he used to shoot Mr. Barlow a year before the shooting, and he kept it hidden except to bring it with him whenever he visited his mother and Mr. Barlow was present. Indeed, on the day of the incident, intending to go to the Barlow residence to visit his mother, Clark put the pistol in his car. And, when he saw Mr. Barlow's vehicle in the driveway, he chose to tuck the pistol under his shirt and carry it inside the home. Therefore, the evidence showed that Clark already possessed the pistol before he was confronted with any situation that would require him to defend

himself, and the trial court's refusal to give Clark's requested instructions on sudden emergency was not a clear or obvious error. See *Kelly*, 290 Ga. at 33 (2) (a).

As for Clark's requested charges regarding self-defense, the trial court provided an extensive instruction on justification, including self-defense, which closely tracked the Georgia Suggested Pattern Jury Instructions. The trial court instructed the jury on the State's burden to disprove the affirmative defense beyond a reasonable doubt; the reasonable belief necessary to justify self-defense by use of force, including the use of deadly force; and when the jury has a duty to acquit based on justification. The trial court also explained that "[t]he fact that a person's conduct is justified is a defense for prosecution of any crime based on that conduct." These instructions adequately covered justification, including self-defense, and the State's burden of proof. The trial court's charge, therefore, was not clear or obvious error. See *Kelly*, 290 Ga. at 33 (2) (a); *Morris v. State*, 303 Ga. 192, 198-199 (V) (B) (811 SE2d 321) (2018).

3. Clark argues that the trial court erred by admitting into

evidence State's Exhibit 65, the final disposition and sentence on his 2013 felony conviction for aggravated cruelty to animals. The exhibit included the indictment, a form showing Clark's change of plea from not guilty to guilty, and a sheet reflecting the entry of a judgment of conviction and sentence for that crime. Clark contends that the admission of the exhibit was error because he had stipulated to the conviction for purposes of the felony murder charge and the danger of the jury using the evidence as inadmissible character evidence outweighed its probative value.

Clark makes no claim of harm stemming from the exhibit's admission beyond the fact that it references his prior felony. The only information given in the exhibit regarding Clark's felony conviction is that he was charged with aggravated animal cruelty for "knowingly and maliciously caus[ing] death to a dog belonging to John Woodard, an animal[,] by shooting him," and that Clark pled guilty to that offense. In contrast, Clark and a rebuttal witness testified extensively and without objection about the prior felony offense in far greater detail than that contained in the exhibit.

The admission of this exhibit was discussed repeatedly at trial. Initially, during the State's case-in-chief, the State sought to introduce the exhibit to prove the charge of possession of a firearm by a convicted felon. Clark stipulated that he was a convicted felon at the time of the shooting, and the trial court did not admit the exhibit at that time. The State later took issue with the trial court's refusal to admit the exhibit, and Clark argued that, because he stipulated to being a convicted felon, the specific details of the prior conviction were impermissible character evidence. The trial court again ruled the exhibit inadmissible, but noted that it could become admissible at a later time.

After the State rested, Clark elected to testify. During cross-examination, the State asked Clark whether he and the State had entered into a stipulation that he was a convicted felon. Clark agreed and then volunteered that he previously pled guilty to aggravated cruelty to animals. Clark then testified in detail about the facts of the incident that led to that conviction. Specifically, Clark testified that he walked up to his neighbor's truck and told the

neighbor that he was going to shoot the neighbor's dog, which was in the back of the truck; that the neighbor's only response was, "well, I'm sorry"; and that he then shot the neighbor's dog. In rebuttal to Clark's testimony the State called John Woodard, the neighbor, who testified that he was parked on the side of the road with his dog in the back of his truck when Clark pulled up beside him in the street and got out of his vehicle. According to Woodard, Clark said, "your dog killed my cat," and then pulled out a gun and shot Woodard's dog twice. Woodard testified that Clark then said, "okay[,] bud, we're even," and then got back into his vehicle and sped off. Clark's counsel did not object to the State's questioning of Clark or to Woodard's testimony, and Clark does not enumerate as error the admission of their testimony. The propriety of this testimony is therefore not before this Court for consideration.

Thereafter, the State again moved to admit into evidence the exhibit containing the documentation of Clark's guilty plea and judgment of conviction for aggravated animal cruelty for impeachment purposes only. The trial court admitted the exhibit

over Clark's objection purportedly for the limited purpose of attacking Clark's credibility. But even if the trial court erred in allowing the exhibit into evidence, any error was harmless. See *Jones v. State*, 305 Ga. __ (3) (__ SE2d __) (2019) (explaining that "[a] nonconstitutional error is harmless if it is highly probable that the error did not contribute to the verdict" (citation and punctuation omitted)). The unobjected-to testimony concerning the felony was far more damaging and detailed in content than was the reference to the felony in the exhibit. In addition, the other evidence of Clark's guilt was strong, as discussed in Division 1 above. Thus, we conclude that it is highly probable the outcome of the trial would have been no different had the exhibit not been introduced. See id. at 657 (3) (any error in admission of defendant's prior conviction was harmless when defendant admitted that he shot victim, no witnesses substantiated defendant's self-defense claim, police found no gun near victim's body, and forensic evidence strongly suggested only one gun was fired at the scene).

4. Clark next contends that the trial court erred in allowing

14

Ms. Barlow to testify about a prior bad act, specifically, the 2012 incident in which Clark pushed her against a door and hit her. Because the incident did not occur between Clark and the victim, Clark argues that the testimony was irrelevant and prejudicial. The District Attorney argues that our review of this issue is limited to plain error because Clark did not object to the testimony about that prior bad act. However, the trial court ruled definitively at a pretrial hearing that evidence of the act would be admissible, so Clark was not required to object to the evidence at trial to preserve his claim of error for appeal. See *Anthony v. State*, 298 Ga. 827, 831-832 (4) (785 SE2d 277) (2016). Therefore, this issue is entitled to ordinary appellate review for abuse of discretion. See *Booth v. State*, 301 Ga. 678, 682 (3) (804 SE2d 104) (2017).

Evidence of a prior bad act cannot be admitted to prove the character of a person, but it may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b) ("Rule 404 (b)"). The Attorney

General argues that Rule 404 (b) does not apply here because the evidence was "intrinsic." We agree.

"The limitations and prohibition on 'other acts' evidence set out in [Rule 404 (b)] do not apply to 'intrinsic evidence.'" (Footnote omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). Evidence is intrinsic when it is "(1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." (Citations and punctuation omitted.) Id. Evidence that explains the context of the crime is admissible if it "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." (Citations and punctuation omitted.) Id. at 485-486 (IV) (d).

The evidence must also meet the balancing test of OCGA § 24-4-403, which says, "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by

16

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *Williams*, 302 Ga. at 485 (IV) (d). Here, the trial court did not abuse its discretion in admitting the evidence regarding the prior incident between Clark and Ms. Barlow because it was intrinsic evidence. The testimony regarding Clark's hitting and pushing Ms. Barlow at her home in 2012 was necessary to complete the story of the crime for the jury. It provided context for the charged offenses to explain why the Barlows were persistent with their requests that Clark leave; why Mr. Barlow did not want Clark at his residence; why Mr. Barlow did not feel comfortable taking a shower, leaving Clark alone in the room with his wife; and why Mr. Barlow followed Clark outside of the home to ensure that he left. Because the evidence was intrinsic, it was outside the reach of Rule 404 (b). See *Williams*, 302 Ga. at 485 (IV) (d). And we cannot say that the trial court abused its discretion in finding that the probative value of the evidence was not substantially outweighed

17

by the danger of unfair prejudice.[2] See OCGA § 24-4-403. Therefore, the trial court did not err in admitting the evidence.

*Judgment affirmed. All the Justices concur.*

---

[2] As we have noted previously, "the exclusion of evidence under [OCGA § 24-4-403] is an extraordinary remedy which should be used only sparingly." (Citation, punctuation and footnote omitted.) *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016).

Decided June 10, 2019 – Reconsideration denied July 1, 2019.

Murder. Dodge Superior Court. Before Judge Wall.

Thomas F. Jarriel, for appellant.

Timothy G. Vaughn, District Attorney, Christopher C. Gordon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.