**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 11, 2022**

# In the Court of Appeals of Georgia

A21A1483. SMITH v. THE STATE.

REESE, Judge.

A jury found Bristol Smith guilty of two counts of aggravated assault and one count of aggravated battery.[1] On appeal, Smith argues that: (1) the trial court plainly erred in failing to instruct the jury on self-defense or justification; (2) the trial court plainly erred in giving an incomplete jury instruction on aggravated assault with a deadly weapon; and (3) trial counsel provided ineffective assistance. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following. Smith, Abby Shetter, and M. M. lived in the same neighborhood and went

---

[1] See OCGA § 16-5-21 (a) (2); 16-5-24 (a).

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

to the same high school. M. M. had been friends with Smith, but ended that friendship after an incident involving all three individuals in the high school parking lot. M. M. testified that Smith had pulled up next to M. M.'s car with Shetter in the passenger seat. M. M. and Shetter started yelling at each other, and Shetter punched M. M. in the face. M. M. felt humiliated by this incident and ultimately changed high schools. Smith texted M. M. to apologize for his role in the incident, and M. M. responded that she no longer wanted him to message her and wanted him out of her life. M. M. testified that Smith was interested in her romantically, but when she did not return those feelings, Smith became aggressive and mean.

In July 2018, M. M. received text messages from an unknown number that she thought was Shetter. Shetter wanted to fight M. M. M. M. consulted her parents, Mr. and Mrs. Minter, and they recommended that M. M. come home, and for Shetter to meet her at their house. M. M. waited for Shetter at the Minter residence. Smith dropped off Shetter about two houses down, and Smith drove off.

Mrs. Minter called the police when she saw Smith's car to try and stop the situation before it escalated any further. Meanwhile, Shetter walked toward the Minter's yard while yelling at M. M. Shetter then hit M. M., and a fight ensued. Mrs. Minter tried to break up the fight after getting off the phone with the police.

At that point, Smith returned in his vehicle, and Mrs. Minter stepped into the road and yelled at Smith to leave. Mr. Minter told his wife to get out of the road and moved toward her. Smith then sped up, swerved into the opposing lane, and hit Mr. Minter with the car. Mrs. Minter managed to avoid the vehicle. As Smith passed Mr. Minter, Smith said "[y]ou stupid mother[fucker,]" and drove away. Mr. Minter suffered a "fairly large rotator cuff tear[,]" which required surgery, and was not able to recover full use of his arm for seven months.

After Smith struck Mr. Minter with the vehicle, Smith returned to the Minter residence, this time with his father, Shawn Smith. Shawn Smith started yelling at Mr. Minter. The Minters showed Shawn Smith the text messages Smith had sent M. M. following the parking lot incident. Shawn Smith calmed down, chastised Smith, then got in the car and left.

Smith testified to a different version of events at trial. According to Smith, he was giving Shetter a ride home and was unaware that she had been texting M. M. Smith let Shetter out of the car a few houses down from the Minter residence because she said she wanted to walk the rest of the way home. On his way back to his house, Smith noticed that Shetter had left her pocketbook in the car, and returned to give it to her. Upon arriving at the Minter residence, he noticed a conflict, and Mrs. Minter

3

started yelling at him from the middle of the road. He then heard Mrs. Minter tell her husband, "Tim, no," as Mr. Minter jumped in the car and punched Smith in the face. Smith testified that he sped off, "fearing for [his] life." At the time, he did not notice the damage to his car, or that Mr. Minter had made contact with it. He denied cursing at the Minters as he drove off. On cross-examination, Smith acknowledged that he had told the police officers at the scene that Shetter was never in his car, because he was scared of being arrested. He did tell the officers, however, that Mr. Minter had punched him.

The jury found Smith guilty of all counts. The trial court denied his motion for new trial after a hearing, and this appeal followed.

Because Smith did not object to the complained-of jury instructions at trial, we review only for plain error.[3] "[U]nless clearly erroneous, this Court will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de

---

[3] See *State v. Williams*, 308 Ga. 228, 231 (1) (838 SE2d 764) (2020). "To show plain error, [a defendant] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." Id. at 231 (2) (citation and punctuation omitted).

novo."[4] With these guiding principles in mind, we now turn to Smith's claims of error.

1. Smith argues that the trial court erred in failing to instruct the jury on self-defense or justification.

At trial, defense counsel requested "standard" jury charges. The court asked whether defense counsel wanted a jury charge for self-defense, and defense counsel responded, "I would, if the Court's requesting it." The trial court declined to issue this jury charge because it "really didn't hear any evidence of self-defense[.]" At the end of the jury charge, defense counsel stated that he had no objections.

"A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force[.]"[5] "[I]n asserting an affirmative defense, a defendant may accept certain facts as true for the sake of argument, and the defendant may do so for the

---

[4] *Johnson v. State*, 361 Ga. App. 43, 54 (4) (861 SE2d 660) (2021) (punctuation and footnote omitted).

[5] OCGA § 16-3-21 (a).

limited purpose of raising the specific affirmative defense at issue."[6] "To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge."[7] However, "[i]t is not error to refuse a justification charge where there is no evidence to support it."[8]

At trial, Smith testified that "[a]ll of [a] sudden I get hit in my face, and I take off, because my glasses were in the passenger's seat, and I was just fearing for my life. I didn't know what he was going to do." The defense's theory of the case was that Mr. Minter caused his own injuries and the damage to the car (which was on the driver's side door) by "diving" into the vehicle and punching Smith. Smith did not testify that he intentionally threatened or used force in an attempt to defend himself, and there was no other evidence supporting a theory of self-defense.[9] Accordingly,

---

[6] *McClure v. State*, 306 Ga. 856, 863-864 (1) (834 SE2d 96) (2019).

[7] *Green v. State*, 302 Ga. 816, 818 (2) (a) (809 SE2d 738) (2018) (citation and punctuation omitted).

[8] Id.

[9] At best, Smith's testimony that Mr. Minter punched him and then injured himself when Smith drove away might give rise to the defense of accident. See OCGA § 16-2-2 ("A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."). While the trial court did not give an accident jury instruction, it did require the jury to find that Smith acted with

6

the trial court did not err, plainly or otherwise, in declining to give this jury instruction.[10]

2. Smith argues that the trial court erred in giving an incomplete jury instruction regarding the aggravated assault with a deadly weapon charge. Specifically, he contends that the trial court omitted the instruction for simple assault, and failed to include a complete instruction as to whether the vehicle was a deadly weapon.

A trial court's instruction for aggravated assault must include the essential elements of assault as well.[11] Under OCGA § 16-5-20 (a), a person commits assault when he "[a]ttempts to commit a violent injury to the person of another[ ]" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." Here, the trial court's jury instruction included this definition, instructing the jury:

---

criminal intent, that he attempted to cause a violent injury or acted with the intent to cause a violent injury for the aggravated assault charges, and that he had an actual intent to cause the harm for the aggravated battery charge.

[10] See *Floyd v. State*, 307 Ga. 789, 799 (3) (837 SE2d 790) (2020) (holding that the trial court did not err in declining to give an instruction on self-defense); *Garner v. State*, 303 Ga. 788, 790-791 (2) (815 SE2d 36) (2018) (same).

[11] See *Coney v. State*, 290 Ga. App. 364, 369 (1) (659 SE2d 768) (2008).

A person commits the offense of aggravated assault when that person assaults another person with any object, device, or instrument that, when used offensively against a person, is likely to or actually does result in serious bodily injury.

To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant *attempted to cause a violent injury to the alleged victim or intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury.*[12]

We have held that a similar jury instruction included the essential elements of simple assault.[13] Accordingly, the trial did not err, plainly or otherwise, in giving this instruction.

With respect to whether Smith's car was a deadly weapon, he contends that the trial court should have included the following instruction: "automobiles, if and when used in an assault upon another person, are not deadly weapons per se but may or may not be deadly weapons, depending upon the manner in which they are used and the circumstances of the case." At trial, the court instructed:

---

[12] (Emphasis supplied.)

[13] See *Fullwood v. State*, 304 Ga. App. 341, 342 (2) (696 SE2d 367) (2010).

The State must also prove as a material element of aggravated assault as alleged in this case that the assault was made with an object, device, or instrument that, when used offensively against a person, is likely to or actually does result in serious bodily injury.

*Whether or not, under all of the facts and circumstances of this case, the motor vehicle alleged in this Bill of Indictment to have been used in making an assault upon the alleged victim did, in fact, constitute an object likely to cause serious bodily injury, is a matter to be decided by the jury from all of the evidence in the case.*

You may or may not infer the serious injury-producing character of the instrument in question from the nature and extent of the injury, if any, inflicted upon the person allegedly attacked.[14]

Under OCGA § 16-5-21 (a) (2), a person commits aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" Here, the trial court's instruction "substantially covered the principle that the jury should consider the manner and means of the object's use."[15] Moreover, "when considered as a whole, the trial court's charge covered the principle of law

---

[14] (Emphasis supplied.)

[15] *Griggs v. State*, 303 Ga. App. 442, 445 (2) (693 SE2d 615) (2010).

9

involved in [Smith's] request[ed instruction in his appellate brief], and the failure to charge in the exact language requested does not constitute reversible error."[16]

3. Smith argues that his trial counsel provided ineffective assistance.

To evaluate [Smith's] claim[s] of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[17] which requires him to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Importantly, should a defendant fail to meet his burden on one prong of this two-prong test, we need not review the other prong. In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. In fact, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[18]

---

[16] *Hamilton v. State*, 297 Ga. App. 47, 50 (3) (676 SE2d 773) (2009) (citation and punctuation omitted).

[17] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[18] *Hall v. State*, 361 Ga. App. 568, 573-574 (3) (865 SE2d 183) (2021) (punctuation and additional footnote omitted).

10

(a) Smith contends that his counsel provided ineffective assistance in failing to object to bad character and bolstering evidence, specifically with respect to testimony from Mr. Minter and Shawn Smith regarding the parking lot incident.

> The limitations and prohibition on "other acts" evidence set out in [OCGA § 24-4-404 (b)] do not apply to "intrinsic evidence." Evidence is intrinsic when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Evidence that explains the context of the crime is admissible if it forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.[19]

Here, evidence regarding the parking lot incident was intrinsic to the offense: it explained the prior difficulties between M. M. and Shetter, why M. M. and her parents were upset with Smith, and the context surrounding the fight at the Minter residence.[20] Thus, trial counsel was not deficient for failing to object to this

---

[19] *Clark v. State*, 306 Ga. 367, 374 (4) (829 SE2d 306) (2019) (citation and punctuation omitted).

[20] See *Clark*, 306 Ga. at 374 (4) (holding that evidence of a prior bad act was intrinsic where it explained why the victims did not want the defendant at their residence, why the victims continually asked the defendant to leave, and "was necessary to complete the story of the crime for the jury.").

11

testimony. Additionally, Smith cannot show prejudice, as testimony regarding the parking lot incident from Mr. Minter and Shawn Smith was cumulative of already admitted testimony from M. M., and when Smith testified in his own defense, he testified to the parking lot incident as well.[21]

(b) Smith contends that trial counsel provided ineffective assistance for failing to object to testimony where Mr. Minter called Smith "psychotic."

At trial, Mr. Minter testified, "As soon as we saw [Smith's] car, we called 9-1-1." Mr. Minter then added, unprompted, "My personal opinion, the boy's psychotic. He's got issues, and he is a danger to my daughter." Defense counsel explained at the motion for new trial hearing that he did not object to this testimony because it fit into his theory of the defense that Mr. Minter punched Smith and showed that Mr. Minter "was unfairly coming after Smith" and was "hotheaded[.]"

Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result.

---

[21] See *Cane v. State*, 285 Ga. 19, 21 (2) (a) (673 SE2d 218) (2009) (holding that the admission of purportedly improper bad character evidence was harmless because it was cumulative of other evidence admitted without objection); *Hambrick v. State*, 353 Ga. App. 666, 674 (2) (b) (839 SE2d 664) (2020) (holding that the defendant did not demonstrate prejudice when the complained-of evidence was cumulative of already admitted evidence).

Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [Smith] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Smith's] original representation was inadequate.[22]

Given trial counsel's explanation of his strategy, we cannot say his failure to object to Mr. Minter's testimony amounted to ineffective assistance.[23]

(c) Smith contends that trial counsel provided ineffective assistance for failing to object to testimony from a police officer who testified that he had questioned whether Smith was truthful during questioning soon after the offense.

At trial, body cameras consisting of sound and video from two officers were played for the jury. Defense counsel testified at the motion for new trial hearing that he did not object to the officer's testimony regarding Smith's truthfulness because he thought it would bolster his theory of the defense that the police were biased against his client, as Mr. Minter was a former police officer, and because he knew that the inconsistencies in the story Smith originally gave to the police would be revealed

---

[22] *Carmichael v. State*, 353 Ga. App. 64, 74 (3) (b) (836 SE2d 184) (2019) (punctuation and footnote omitted).

[23] See id.

during Smith's testimony and through the body cameras. Given trial counsel's explanation of his strategy, we cannot say his failure to object to the officer's testimony amounted to ineffective assistance.[24]

(d) Smith briefly argues that trial counsel provided ineffective assistance by failing to object to the jury instructions for the issues enumerated in Divisions 1 and 2 above.

As explained in Divisions 1 and 2, the trial court did not err in giving those jury instructions. Thus, trial counsel's failure to object to the jury instructions did not amount to ineffective assistance.[25]

*Judgment affirmed. Doyle, P. J., and Brown, J., concur*.

---

[24] See *Carmichael*, 353 Ga. App. at 74 (3) (b).

[25] See *Green*, 302 Ga. at 818-819 (2) (a).